### Charles Martin v. Jacob L. Ash.

*Contract*: *Effect of rescission.* A party having regained possession of property, which he had parted with under a contract he now alleges to be void for fraud, and which he rescinds for that reason, is not estopped, while retaining such possession, to defend his title on the ground of the fraud,—it appearing that he retains nothing except that which was originally his own.

A party defrauded in a contract will not be debarred of his rights unless his delay to assert them amounts to a waiver, or he consciously does some act which will prevent the other party from being put in as good condition as he was before. A contract right to rescind may be enforced with the same results.

*Heard April 7. Decided April 12.*

Error to Wayne Circuit.

This was an action of replevin brought by Jacob L. Ash, in the Circuit Court for the County of Wayne, against Charles Martin, for a yoke of oxen. Ash recovered judgment in the Court below, and Martin now brings the record here by writ of error.

*Ward & Palmer*, for plaintiff in error.

CAMPBELL, CH. J.

Ash and Martin agreed to exchange certain oxen and a pony belonging to Martin for a span of horses belonging to Ash. The bargain was made on a Friday in December, 1867, and the animals were delivered; but it was agreed that in the next week Martin should have his oxen again and Ash his horses, to use for some days, and they were thus received and used; but Martin, after getting the oxen, repudiated the bargain and kept them,—averring that he had been defrauded, and that the horses had been falsely represented and warranted sound, with an agreement that they might be returned if not sound, which he claimed turned out to be the fact. The horses were left under Ash's control, but the evidence does not show whether or not he afterwards exercised ownership over them.

The Circuit Court gave judgment in Ash's favor, upon the ground that Martin, by getting the oxen under the agreement, had affirmed it, and was estopped from repudiating it. It seems to be assumed, but the statement of the evidence does not show it, that Martin had discovered the fraud when he got the oxen back. It does not appear whether he had any previous personal interviews with Ash or not, but in our view this is not important.

If Martin, under the agreement, and after discovering the fraud had obtained something which he could not have properly retained after rescinding it, then Ash would perhaps have been damnified in such a way as to preclude

such rescission. It would have been an election to abide by the contract. But the oxen belonged to Martin if the contract was avoided, and obtaining them was only obtaining what, upon rescinding the agreement, he had a right to keep. This being so, there was nothing in this act which could prevent Ash from being put in as good a condition as before, and the horses he had sold were by this very act restored to him. It would not be reasonable to compel Martin to return the oxen and take his chances of getting them back. Where there has been willful fraud on one side, and none on the other, the party defrauded, while compelled to act with reasonable promptness, ought not to be debarred of his rights, unless he has made such delay, as in itself amounts to waiver, or has consciously done some act which will prevent the other party from being put in as good a condition after the rescission, as he would have been had it been made more promptly. And if there was no fraud, but a contract right to rescind on the discovery of the defect in the horses, the same rules would apply. There was nothing unreasonable in this case, and Martin had a right, therefore, to rely on his rescission, if the facts were as he claimed. The Court declined to consider these facts. We think the judgment, therefore, should be reversed, with costs, and a new trial ordered.

The other Justices concurred.