RISCH vs. VON LILLIENTHAL and wife.

RESCISSION OF CONTRACT: SALE OF REAL ESTATE.  (1) *Equity will rescind contract made on faith of fraudulent representations.*  (2) *Vendee's visiting land not conclusive.*  (3) *Inadequacy of consideration as evidence of fraud.*

1. A., after reading certain representations of the character of B.'s farm, made by B. in a letter to his city agent for the sale of the property, visits the farm in person, but, on account of the depth of snow, cannot determine for himself the truth of B.'s representations, which are then and there repeated, in regard to the nature of the soil, the practicability of mowing the meadow land, etc.; and he purchases on the faith of such representations, which are fraudulent and false, paying a very much larger price than the farm is worth.  *Held*, that equity will *rescind the contract.*

2. The fact that A. visited the land before purchasing is *not conclusive*, under the circumstances of the case, that he did not finally purchase *on the faith* of B.'s said representations; especially as such visit was necessary to enable him to ascertain *other facts* relative to the situation of the farm, not included in such representations.

3. Mere *inadequacy of consideration* is not of itself sufficient ground for rescinding a contract; but gross inadequacy of consideration may be of decisive weight in determining the question of *fraud.*

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiff, being the owner of a house and lot in Milwaukee, of the value of $2,200, purchased of the defendant *Von Lillienthal* a farm in Marquette county, represented by the latter to be worth $5,000, giving his house and lot in exchange

Risch vs. Von Lillienthal and wife.

therefor, and executing notes secured by mortgage on the farm for the balance of the purchase money. This action was brought to rescind the sale, and for a cancellation of the notes and mortgage and a reconveyance of the property, on the ground of fraudulent representations of *Von Lillienthal* as to the value of the farm. The evidence is sufficiently stated in the opinion. The court found for the plaintiff, and gave judgment that the notes and mortgage in question were void for fraud and should be set aside, that the conveyance of the farm to plaintiff (which had not been recorded) should be brought into court and cancelled, that the conveyance by plaintiff of the house and lot be annulled and set aside, and that defendants execute a quit-claim deed thereof to plaintiff. Defendants appealed from the judgment.

*Mann & Cotzhausen*, for appellants, contended that the judgment should be reversed, because plaintiff placed no reliance upon the representations of *Von Lillienthal*, but went in person to examine the farm. Courts of equity will not rescind contracts without the clearest proof of fraudulent representations, and that they were made under circumstances showing that the contract was founded on them. 1 Story's Eq. Jur., § 200. It is the purchaser's own folly and laches if he does not avail himself of the means of knowledge within his reach. Equity will not relieve parties, under ordinary circumstances, who refuse to exercise a reasonable diligence and discretion. 1 Story's Eq. Jur., § 200a. Even if defendant's representations were false, plaintiff would be entitled to no relief in equity, since it appears from his own testimony that he did not rely on them, and if defrauded he must attribute it to his own folly and negligence. *Bowman v. Page*, 11 Wis., 301. 2. Mere inadequacy of consideration is not a ground of relief in equity. No such principle is known at common law. The consideration, whether more or less, supports the contract. The value of the thing is necessarily fluctuating, depending on many different circumstances. If courts of equity should investigate all

these circumstances, they would throw everything into confusion, and set afloat all contracts. 1 Story's Eq. Jur., § 245. The evidence was very conflicting as to the value of the farm. In such cases it is better that the contract shall stand, than that the rule of equity should depend on the judgment of a single person. *Seymour v. Delancy*, 3 Cow., 445.

*Johnson & Rietbrock*, for respondent, argued that equity would not limit itself by set rules or precise definitions in matters of fraud, citing *Kuelkamp v. Hidding*, 31 Wis., 503, which was an action to cancel conveyances on account of fraud, the fraud and inadequacy of consideration being much less than in this case. In support of the judgment, counsel also cited *Miner v. Medbury*, 6 Wis., 295, the only difference between that case and this being that there the purchaser started to view the premises which he proposed purchasing, but was prevented by stress of weather, while here the purchaser went to the land, but was prevented from seeing it by reason of its being covered with snow. In both cases the parties occupied the relation of vendor and vendee, the latter relying upon the statements of the former in making the purchase. In both cases the quality and value of the property sold were grossly exaggerated by the vendor, and the difference between the real value of the property and the price at which it was sold was such as to amount to a gross inadequacy of consideration. In this case, also, as in *Miner v. Medbury*, the doctrine of *Smith v. Richards*, 13 Pet., 26, applies, where the court say : " Where, from the remote situation of the land, or any other cause, a contract is made for the sale of the land without viewing it, there is the same reason that the seller should be responsible for a false affirmation respecting its quality, as for any other fraud. We think we may safely lay down this principle, that wherever a sale is made of property not present, but at a remote distance, which the seller knows the purchaser has never seen, but which he buys upon the representation of the seller, relying on its truth, there the representation in effect amounts to a warranty." The

mere fact that in the cases above cited the land was distant, and could not be seen by reason of the distance, and that in this case it was present, but could not be seen because covered with snow, is not such a difference as to change the equities of the parties. The doctrine established by the cases cited is, that credulity and confidence on the part of the vendee do not excuse positive fraud on the part of the vendor.

COLE, J. Was the plaintiff entitled to a rescission of the contract, and to the relief granted in the court below, on account of fraud and misrepresentation practised upon him by the defendant? The subject-matter of the contract was a farm, situated in the county of Marquette, consisting of three hundred and eighty acres. The plaintiff is a resident of Milwaukee, and, being desirous to exchange his homestead, situated in that city, for a farm in the country, and seeing an advertisement of this farm, in a German paper published in the city, by one Meyer, a real estate agent, applied to such agent for information about the property. During the negotiations with the agent, the plaintiff was shown a letter written by the defendant to Meyer, giving a description of the farm, its quality, soil, etc. About the 6th day of March, 1872, the plaintiff and his son went to the residence of the defendant in the town of Harris in Marquette county, to see the farm, and then entered into the contract for the sale and purchase of the same. By the terms of the contract the defendant agreed to sell and convey, and the plaintiff agreed to purchase, the farm for $5,000, and certain personal property therewith for the price of $200; the plaintiff conveying his homestead in the city of Milwaukee to the defendant in part payment of the consideration, at the agreed price of $2,200. The trade was consummated by the execution and delivery of the deeds and mortgage to secure the payment of $3,000, the unpaid purchase money.

In the complaint the plaintiff alleges that it was impossible for him to examine and ascertain the character and quality of

the soil when he visited the farm, because the ground was covered with snow; and he states that the defendant then falsely and fraudulently represented that the farm was a good and fertile farm; that the soil thereof was a clayey loam of excellent quality; that the defendant did falsely and fraudulently represent that certain earth which he dug up from under the snow near the dwelling house on the farm, and which was mostly clay, was a specimen of the soil, only the soil of the farm was generally a little lighter and more loamy than the specimen, and was therefore better for cultivation; and did falsely and fraudulently represent that the meadow land on the farm, of one hundred and twenty acres, was so firm, dry and level that it could nearly all be mowed with a mowing machine; that the upland not cleared was well wooded, and that the farm was well worth at least $5,000. The complaint further alleges that all these representations and statements made in respect to the nature, quality and fertility of the soil, and the situation and character of the meadow land, were relied upon and solely influenced him in making the contract.

The circuit court found, among other things, as matters of fact — and the finding upon this point is not excepted to by the defendant, and if it were we think it could readily be shown to be in accordance with the weight of evidence — that the defendant assured the plaintiff, while they were examining the farm, that the soil was a rich loam, consisting of a mixture of clay and sand, and was very fertile; that there were about one hundred and twenty acres of good marsh meadow land, so situated that all or nearly all could be mowed with a mowing machine; that a small pile of clay, which happened to lie exposed to sight near a log house, was a fair specimen of the soil of the farm, except that the soil was some of it a little lighter; and that the farm was well worth $5,000; whereas, in truth and in fact, said representations as to the quality and value of the farm were false and fraudulent, and the soil was not a rich loam consisting of a mixture of sand and clay, but was and is,

with the exception of a few small clayey patches, composed of light sterile sand, worn out by a long course of tenant farming, and was nearly worthless for cultivation; that the pile of clay was not a fair specimen of the soil; that the meadow land is not so situated as to admit of being mowed by a machine, but is so low and wet, except in very dry seasons, that only a very little can be safely traversed by horses; and that in wet seasons the hay cut thereon has to be carried together with men. The latter part of this finding, commencing with the words, "and that a small pile of clay which happened," etc., was excepted to as not being supported by the evidence.

Now it is claimed and insisted on the part of the defendant, that conceding these representations and statements in regard to the quality of the soil and the situation of the meadow land to have been made, still it appears that the plaintiff placed no reliance upon them, and consequently is not entitled to a rescission of the contract on the ground of fraud, even if the representations were untrue. Of course the doctrine is well settled, that in order that a misrepresentation in regard to the subject matter of the contract be available as a ground of relief in equity, it must not only be material, but must have been relied upon by the other party in entering into the contract. That is, the party seeking relief must have acted upon the faith and credit of the false representation. The fact referred to in support of the position that the plaintiff did not rely upon the representations and statements in regard to the quality of the soil or situation of the meadow land which were in the letter written to Meyer by the defendant (and which letter was read to the plaintiff), or upon anything said in their conversations upon these subjects, is, that it appears that the plaintiff was unwilling to rely upon these statements, but chose to resort to the proper means of verification before entering into the contract, and therefore visited the farm to examine it for himself. If, it is said, the plaintiff relied upon the description of the farm as to its soil, etc., as given in the letter, why did he not effect the

trade with Meyer without visiting the farm? But the fact that the plaintiff with his son went to where the defendant resided, and saw the land, affords slight grounds, if any, for assuming that he did not fully rely upon the representations and statements made to him in regard to the quality of the soil and the character of the meadow land. Even if he relied implicitly upon these representations, he might well desire to visit the farm for the purpose of seeing the general lay of the ground — the situation of the farm in respect to highways, neighbors, water, etc. In the estimation of many persons, these were matters of importance, even if the soil and land in other respects corresponded fully with the representations. The testimony shows conclusively that there could be no examination of the soil and of the meadow, on account of the depth of the snow. It will not therefore do to say that it was the plaintiff's own fault that he did not detect the falsity of the statements made to him upon those points, when he was upon the farm. The means of knowledge were not open to him so that by the use of his senses he could detect and disprove the misstatements. Again it is said, after the plaintiff reached the farm and found the snow so deep that he could not examine the soil for himself, it was his duty, as a prudent man, to have inquired of the neighbors as to its character and quality. It seems to us the plaintiff was bound to use no such diligence. He had right to rely upon what the defendant had stated, as being true and according to the fact. At all events it comes with ill-grace from the defendant to complain that the plaintiff relied too implicitly on his word, and should have been more cautious, more distrustful of his statements. In the letter the defendant had stated that the farm was a "good one;" that every one acquainted with it "pronounced it an excellent place;" that "the soil is of a sandy clay and black loam;" and under the circumstances the plaintiff had a right to act upon the presumption that these representations were true. It seems to us that the facts bring the case fully within the reason and principle of those cases which hold that

wherever a sale is made of property not present but at a remote distance, which the vendor knows the purchaser has never seen, but which he buys on the representation of the vendor, relying upon its truth, there the representation is deemed in effect to be a warranty. *Smith v. Richards*, 13 Peters, 26 ; *Miner v. Medbury*, 6 Wis., 295, and authorities cited. And while it may be true that courts of equity do not attempt to relieve parties against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information ; yet where a party has made a false representation in respect to the soil, by which another has been induced to enter into a contract of purchase, and where the purchaser, although he may go upon the land, is prevented from examining the soil on account of the depth of snow, there we think relief should be granted. The rule that the purchaser must use reasonable diligence and prudence to ascertain the truth of the representations, does not prevent him from setting up the fraud in avoidance of the contract entered into under those circumstances.

But in this case it is insisted that there was no fraud ; that the representations made by the defendant with reference to the quality and condition of the farm were substantially true. Upon that question, we think the testimony is overwhelmingly against that conclusion. The soil was shown to be, in the language of the court below, not a rich loam, consisting of a mixture of sand and clay, but was, with the exception of a few small clayey patches, composed of light, sterile sand, greatly exhausted by tenant farming. It was not a good farm, but was a very poor one. It did not produce good crops. The meadow land could not be mowed with a machine ; it never had been mowed in that manner, and tenants who had cultivated the farm say it was impossible, on account of the marsh being so wet in all seasons, thus to mow it. It is true, there is great conflict in the evidence upon these points ; but we think the decided weight of testimony sustains these conclusions. There is also, as is common in such cases, a great diversity of opinion as to

the value of the farm. My own conclusion, as derived from the evidence, is, that the farm was not worth a farthing more than the plaintiff's Milwaukee property. The defendant had purchased it, within a year, of Barnes for $1,200, and this included some stock and growing crops. He sold it to the plaintiff for $5,000, receiving therefor in part payment the city property owned by the plaintiff, and the latter's promissory notes, secured by a mortgage on the farm for $3,000. " Mere inadequacy of consideration or inequality in a bargain is not a ground to set aside a transaction, if the parties were on equal terms, and in a situation to judge for themselves, and performed the act wittingly and willingly.  *  *  But inadequacy of consideration, if it be of so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for canceling a transaction." Kerr on F. & M., 186–7; *Kuelkamp v. Hidding*, 31 Wis., 503. We are all fully satisfied from the evidence that the price agreed to be paid for the farm is so far in excess of its real value, taken in connection with the misrepresentations made by the defendant in reference to the nature and quality of the soil and the situation of the meadow land, that it should and must avoid the sale. As to the correctness of this result, our minds are clear. We content ourselves with this statement of our conclusion, without going into any discussion or analysis of the evidence upon which it is founded.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.