No. 2348.

## A. L. LABBE v. R. H. CORBETT.

1. PUBLIC POLICY.—A contract under which the owner of sheep infected with disease, agrees that another, for a specified consideration may keep, use and shear them, is not rendered invalid as against public policy be-cause the owner induced the other party to drive them along the public highway to a distant range, by his representations that they were not diseased.  Even if the owner knew the diseased condition of the sheep, and that the other party intended to drive them along the public high-way, the contract would not thereby have been void as against public policy, the fact of such removal of the sheep forming no part of the contract.

2. ILLEGAL CONTRACT.—While there is conflict of decisions on the question as to whether a contract is rendered invalid on the mere ground that one party to it may have known of the intention on the part of the other to use the subject matter thereof for an unlawful purpose, the tendency of the Texas decisions is to deny the invalidity of a contract for such cause.

3. CONTRACT.—A contract whereby one is permitted to select from the flock of another, one thousand "picked ewes" does not necessarily imply that the sheep shall be sound and free from all disease.

4. MEANS OF KNOWLEDGE—PRINCIPAL AND AGENT.—One who by contract is to receive specified articles, he being present at their delivery, and who seeks to avoid liability on his contract by reason of the existence of a latent defect which impaired their value and operate a fraud upon him, is not chargeable with the knowledge of the defect that may have been known at the time by his employe whose only duty was to take charge of and transport the articles.

5. SAME—FRAUD.—When it has once been established that there has been a fraudulent representation by which one has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry.  The perpe-trator of the fraud is liable for the injury caused by his falsehood to one who acted in the belief that the representation was true.

6. INTEREST.—On a contract to pay a designated sum, and in addition thereto other instalments, but not as interest, the mere fact that such instalments aggregate a sum equal to twelve per cent on the main debt, will not authorize them to be computed in a judgment as interest.

7. PRINCIPAL AND SURETY.—It is error to render judgment against a principal and in favor of a surety with direction that execution shall issue, in a suit against both, when the surety has not paid the debt, and when his right to an execution is not made dependent on his future payment.

APPEAL from Nueces.    Tried below before the Hon. J. C. Russell.

*Stanley Welch* and *Delmas Givens*, for appellant: That the contract was illegal, cited, Penal Code of Texas, articles 694, 695; Read v. Smith, 60 Texas, 379; Wegner Brothers v. E. J. Biering & Co., 65 Texas, 506; Seeligson v. Lewis et al., 65 Texas, 215; Davis v. Sittig, 65 Texas, 497; 1 Parsons on Contracts, 457; 1 Wait's Actions and Defenses, 87, 88.

That, where a vendee relies upon the representations of a vendor in the delivery of sheep, he·is not bound to the use of diligence and care to ascertain their condition, but may rely upon the representations of the vendor, and if the representations are false and fraudulent, he may plead the same against the demand of the vendor for the purchase money, they cited: Ramey v. Allison, 64 Texas, 697; Ruth v. Caron, 64 Texas, 289; Loper v. Robinson, 54 Texas, 510; Kerr on Fraud and Mistake, 334, et seq.

That there was error in the judgment against the surety, they cited: Akin v. Jefferson, 65 Texas, 137; Kerr v. Hutchins, 46 Texas, 385; Anderson v. Webb, 44 Texas, 147; Clendinning v. Matthews, 1 Appeals, Civil Cases, sections 905, 907; Harrall v. Babb, 19 Texas, 148; Revised Statutes of Texas, article 1327; Adams and Wickes v. Cooke, 55 Texas, 166; Wood v. McGuire's Children, 17 Georgia, 361, and authorities cited.

No brief on file for appellee.

STAYTON, ASSOCIATE JUSTICE.    On June 25, 1880, R. H. Corbett made a written contract with A. L. Labbe, which was signed by Jose Vaello as a surety, whereby Corbett agreed that Labbe should have the use of one thousand picked ewes for the period of three years, and under this agreement one thousand ewes were delivered.    The ewes were valued at two thousand seven hundred and fifty dollars, and, for their use, Labbe was to pay, each year, a sum equal to twelve per cent of their value, and this was to be paid semi-annually.    Labbe was ·to have the use of the ewes, their increase and wool for the period named, and

was to bear all expenses incident to their care, but at the end of the time for which they were let, Labbe and his surety bound themselves to redeliver to Corbett the same number of picked ewes, and on failure, from any cause to do this, they bound themselves to pay to Corbett the sum of two thousand seven hundred and fifty dollars. At the end of the time the ewes were not delivered, and this action was brought to recover their value, as well as the sums falling due semi-annually, which had not been paid.

The defendant demurred generally, and also answered with a general denial, and sworn pleas of failure of consideration. One of these sworn pleas alleged failure of consideration, on account of the ewes being diseased with infectious and contagious disease, when first delivered by the plaintiff to him. The other sworn plea, of failure of consideration, alleged: "That by the false and fraudulent representations of said plaintiff, this defendant was induced to accept charge and control of a thousand head of sheep that were in a diseased condition, and affected with contagious and infectious disease of scab, and the malignant disease of lombriz, and caused this defendant to drive the same beyond the limits of the land of plaintiff, and drive and graze the same along, and upon the public roads, from the ranch of said plaintiff, in Nueces county, to the range of said defendant, in LaSalle county, a distance of more than thirty-six miles, the plaintiff, then and there, well knowing said sheep were diseased with said scab and lombriz, and this defendant being in ignorance thereof; and said false representation, and causing this defendant to so remove and drive the said sheep, under the said contract, was in violation of law, and especially articles 694 and 695 of the Penal Code of this State, and said contract became thereby, as against the law and public policy, wholly void."

To so much of this answer as claimed that the contract, which was set out in the pleadings, was illegal and contrary to public policy, the court sustained a demurrer, and this is assigned as error.

I. That a contract can not be enforced which has for its purpose the securing of the performance of an act forbidden by the common or statutory law, is well settled; and so, whether the act be one *malum in se* or only *malum prohibitum.*

There is nothing in the contract, made the basis of this action, which required the defendant to do any act forbidden by law.

It gave to him the right to the use and possession of the ewes for the period of three years, and thus gave him the power, by their use, to violate a penal law, if the sheep were diseased as alleged. So standing the contract, if it be illegal it must be because the appellee knew when he made it that the appellant intended to remove the sheep to another range, and in so doing might violate the law. No case has gone to the extent of holding such a contract invalid.

The pleadings do not allege that the appellee had knowledge of the fact that the appellant intended to drive the sheep along or upon public roads in taking them from one range to another, but do allege that the appellant was caused or induced so to drive them by the representations made by the appellee to the effect that the sheep were not affected with the contagious and infectious diseases named; i. e., that he was thus induced to do an act which, as to him, in the absence of knowledge that the sheep were so diseased, would not be penal in its character, which he would not have done had he known the sheep were diseased.

Had the answer, however, alleged that the appellee knew when he made the contract sued upon, that the appellant intended to drive the sheep along or upon public roads, even then we are of opinion that the demurrer would have been properly sustained. The uses to which the parties contemplated the ewes should be put, the breeding of lambs and the growing of wool, were lawful in themselves. The contract gave the appellant the right to them for these or any other lawful uses for the named period; but there is nothing in it tending to show that, for the accomplishment of these purposes, any act forbidden by law was necessary, contemplated, or required by the contract. The manner in which the appellant should carry the sheep from one ranch to another was in no way regulated by the contract, which fixed the uses to which the animals were expected to be applied.

There is a conflict of authority as to whether a contract is void only when the unlawful use of the subject matter of it is a part of the agreement, or whether, though this is not so, the known intention of the one party to put it to an unlawful use will render it void. The tendency of the decisions in this State has been towards a denial of the invalidity of a contract on the mere ground that one party to it may have known of an intention on the part of the other to use the subject matter of the

contract for an unlawful purpose. (McKinney v. Andrews, 41 Texas, 366; Bishop v. Henry, 34 Texas, 252.) Be the true rule as it may, the mere knowledge of the appellee that the appellant may have intended to drive the sheep on or over public roads would not invalidate the contract, whose purpose was to give and limit the uses to which the sheep might be applied, and not to regulate the incidental powers the appellant might use in controlling and caring for them, with a view to make the lawful uses most profitable to himself.

II. Corbett was the owner of more than one thousand ewes at the time the contract was made, and it promised that appellant should have one thousand "picked ewes." On the trial there was a direct conflict in the evidence as to whether the appellant knew the sheep were diseased at the time he made the contract and received them, and as to whether the appellee made any misrepresentations as to the condition of the sheep. The appellee stated that the sheep were diseased, and that this fact was known and made known to the appellant, and to illustrate that fact he was permitted to state that on account of their diseased condition it was agreed that appellant should receive twenty more than the contract called for, and that these he did receive. This evidence was objected to on the ground that it tended to prove a contract other than that sued upon, and not made by the surety or agreed to by him, which released him in that the contract made by him was that his principal should have one thousand "picked ewes," and not that number of diseased ewes. In view of the facts surrounding the transaction, the words "picked ewes" evidently meant selected ewes; and this selection was to be made from the appellee's flock. We can not, without doing violence to the language and to the evident intention of the parties, hold that the words "picked ewes" meant ewes not diseased.

The surety, however, has not appealed, and the appellant, if error was committed as to the surety, could not be heard to complain when it did not affect his right.

III. The court instructed the jury that the appellant would be held to have had knowledge of the diseased condition of the sheep if his agents had such knowledge. If it had been shown that appellant had an agent or agents to whom he had entrusted the duty of ascertaining the condition of the sheep, then such a charge as was given would have been correct, for, in such case, the making of inquiry would have been within the

scope of the agent's power, and it would have been his duty to communicate to his principal the knowledge possessed by himself. The facts, however, do not show any such agency, but do show that the appellant was present to examine the sheep for himself, and that he had persons with him whose sole duty it was to assist him in driving and caring for the sheep. Some of these persons stated that they saw some diseased sheep at the time they were delivered. The knowledge of persons so situated could not be deemed to affect the appellant with knowledge of the facts known to them, and as the evidence of the appellant and the appellee was directly in conflict as to appellant's knowledge that the sheep were diseased, and as to whether misrepresentations were made as to the health of the sheep, the jury may have based their finding on the fact that some of the employes of appellant may have known that some of the sheep were diseased at the time they were delivered.

This is rendered the more probable by the fact that the court repeated the charge complained of. It should not have been given.

IV. The court instructed the jury as follows:

"The jury are further instructed that, if the defendant Labbe knew of the diseased condition of said sheep when he received them under said contract, or, by the use of ordinary care and diligence, could have known of their diseased condition, then they are further instructed that such diseased condition of said animals, or subsequent loss therefrom, is no defense in this action to the plaintiff's demand, and you will find for the plaintiff."

This charge is assigned as error, in that it makes the appellant liable, although the jury may have believed that the appellee made the misrepresentations alleged to have been made by him, if by the exercise of ordinary care and diligence the appellant might have ascertained that the representations were not true. If the misrepresentation as to the health of the sheep was made by the appellee, this was known by him to be untrue, for he testified that he knew the sheep were diseased; so we are relieved from the necessity of determining the effect of an innocent misrepresentation as to a matter, where the party to whom it is made has means to verify its correctness and fails to avail himself of them. The misrepresentation alleged to have been made was one material in character, and, if made, calculated to prevent an examination by the appellant for him-

self, to ascertain the true condition of the sheep, and it related to a matter of which the appellee, from his own statement, had actual knowledge.

The rule asserted in the case o. Railway Company v. Kisch (L. R., 2 H. L.. 120), under the facts of this case, seems to us the true one. It is as follows: "When once it is established that there has been any fraudulent misrepresentation, * * * by which a person has been induced to enter into a contract, it· is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: "You, at least, who have stated what is untrue * * * for the purpose of drawing me into a contract, can not accuse me of want of caution, because I relied implicitly upon your fairness and honesty."

The rule is reasonable and well sustained by authority. (David v. Park, 103 Mass., 503; Mead v. Burr, 32 N. Y., 278; Martin v. Ash, 20 Mich., 166; Bisch v. Von Lilienthal, 34 Wis., 256; Roberts v. Plaisted, 63 Maine, 339; Mallock v. Todd, 19 Ind., 135; Pomeroy's Eq., 895.)

There was a general verdict for the plaintiff against both of the defendants, under a charge which authorized a finding for the sums claimed to be due, with interest thereon from date of the contract until time of trial. This verdict also established the suretyship of defendant Vaello, and to it some formal objection is made which need not be considered.

A judgment was entered in favor of the plaintiff against both of the defendants for two thousand seven hundred and fifty dollars, with interest thereon at the rate of twelve per cent per annum from the date of the contract until trial, and for interest on the semi-annual· payments which had not been made, from the time each became due at the rate of eight per cent per annum. The judgment for two thousand seven hundred and fifty .dollars, with interest thereon, computed as stated, was also made to bear interest from judgment at the rate of twelve per cent per annum. This judgment was erroneous. The appellant did contract to·pay, each year during which he was entitled to hold the sheep, a sum equal to twelve per cent of their estimated value, but not as interest.

If the appellee was entitled to recover on his entire claim, then he was only entitled to recover the several sums the appellant had contracted to pay for the hire of the sheep, with interest at the rate of eight per cent per annum on each instal-

ment from the time it became due, and the sum of two thousand seven hundred and fifty dollars, with interest thereon at the rate of eight per cent per annum from the time the ewes should have been redelivered to him, and these sums aggregated should have borne only eight per cent per annum after judgment.

There was a further error, in that judgment was rendered in favor of the surety, and against the appellant for the full sum adjudged to the appellee and execution was directed to issue to enforce its payment, without reference to whether the surety should satisfy the judgment against his principal. This error was called to the attention of the court below.

For the errors noticed in the judgment it will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered January 17, 1888.