call for reversals. The prosecution should keep within the record.

The judgment is reversed, and the cause is remanded.

PRENDERGAST, P. J.; and HARPER, J. We agree to the reversal of this case on account of the matters presented in regard to the action of the district attorney in stating to the jury "that he had learned this defendant is a bad hombre, that he had committed a crime in Mexico," etc.; there being no evidence as to these matters in the record.

[2, 3] We do not think the charge on murder in the second degree is subject to the criticism herein contained, and for our views we refer to Hicks v. State, 171 S. W. 755, this day decided. Nor is any other error presented by the record when it is read as a whole.

---

WICKS et al. v. COMVES et al. (No. 356.)

(Court of Civil Appeals of Texas. El Paso. Dec. 3, 1914. Rehearing Denied Dec. 24, 1914.)

1. SPECIFIC PERFORMANCE (§ 10*)—PARTIAL ILLEGALITY OF CONTRACT.

A contract, illegal in part, may be specifically enforced if the illegal part is severable, but not if the contract is entire.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 20–25, 50; Dec. Dig. § 10.*]

2. CONTRACTS (§ 122*)—VALIDITY OF LEASE—CONTRARY TO CITY ORDINANCE.

A lease of space, for a fruit stand on the outside of a store building, providing that if the occupation of the space be contrary to ordinance, then the lessee will be provided space inside the building, is not illegal, though an ordinance is passed forbidding the erection of such stand on the sidewalk.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 495; Dec. Dig. § 122.*]

3. LANDLORD AND TENANT (§ 32*) — SUBLESSEE—ACCEPTANCE OF RENTS.

Where an assignee of a stock of confectionary and the lease of a store actually knew that there was a sublease to a fruit dealer, who had his stand on the outside of the store, the acceptance of the rents from the sublessee ratified the lease, though it contained a provision that if the city compelled the vacation of the fruit stand, the lessee would give the sublessee space inside.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 92; Dec. Dig. § 32.*]

4. LANDLORD AND TENANT (§ 80*) — BREACH OF CONTRACT — SURRENDER OF PREMISES — ORDER OF COURT—FUTURE PROFITS.

Where, in sequestration proceedings between an assignee of a lease and a sublessee of the original lessee, it was expressly ordered by the court that a surrender of the premises would not prejudice the right of either party, such surrender cannot be urged as defeating the sublessee's right to recover future profits in an action on the contract of lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 254–257; Dec. Dig. § 80.*]

Walthall, J., dissenting.

Appeal from District Court, Harris County; N. G. Kittrell, Judge.

Action by Louis Comves and others against Moye Wicks, Jr., and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

F. F. & E. T. Chew, of Houston, for appellants. A. B. Wilson and Cole & Cole, all of Houston, for appellees.

HARPER, C. J. Appellee Louis Comves, brought this suit against appellants, Moye Wicks, Jr., Z. Morris, G. L. Black, and A. J. Zydias for specific performance of a lease contract between James Condos & Co., and Louis Comves, and in the alternative for damages, for failure upon their part, appellants, to render specific performance. A verdict was instructed by the trial court for appellees, and a judgment was rendered for $905, from which their appeal is perfected.

The assignments of error and the several propositions sufficiently reveal the points of law involved in this appeal, so that it is not deemed necessary or expedient to quote the pleadings of the parties.

The first to seventh assignments charge error upon the peremptory instruction of the trial court, and charge that the trial court erred in the instructed verdict, in refusing a special charge, because: (a) The lease contract was in violation of a city ordinance of the city of Houston against storing or vending fruits, etc., on sidewalks; (b) a portion of the lease contract being void and unenforceable, for illegality, it destroys the whole of the contract; (c) was the contract ratified because appellants accepted rents? (d) because appellee voluntarily surrendered the premises, and he is therefore not entitled to recover damages; (e) appellee not having been dispossessed of the premises, is not entitled to recover, because not entitled to demand the five feet square unless dispossessed.

[1] In this class of cases the exact contract sought to be enforced must be construed, and if illegal in whole, it cannot be enforced; if in part, and not severable, then the vice permeates the whole, and it cannot be enforced in part, but if severable, and the legal part in no way depends or rests upon the illegal part, the contract is severable and the legal portion will be enforced. Being of the opinion that a correct answer to the quæry, "Is any portion of the contract sued on illegal?" must be resolved in favor of its legality as a whole, it will be unnecessary to discuss the severability of the contract.

[2] The parts of the contract sued on essential to the determination of the questions presented by the assignments are as follows: "This agreement of lease * * * between Jos. Condos & Co. * * * and Louis Comves * * * witnesseth that the lessor does * * * lease and demise unto the lessee * * * the possession and occupancy and use of the following property: That certain fruit stand * * * being upon the outside of the one story building now occupied by Condos Bros., as a candy store * * * said fruit stand ex-

tending from the main street entrance of Condos Bros., to the corner of the building on Texas avenue, thence to the back entrance on Texas avenue of Condos Bros. place of business, together with all shelving, * * * etc., which are a part thereof * * * for a monthly rental of $200.00 in advance * * * said lease being from the first day of May, 1911, until April 1, 1914. * * * It is expressly understood and agreed that in the event the city of Houston complains of this aforesaid fruit stand being placed upon the outside of said building and projecting over and covering a portion of the sidewalk in front and on the side of said building, or in the event that any city ordinance which is now in force or which may hereafter be passed by the city of Houston shall make it impossible for said fruit stand to remain upon the outside of said building or to project over or occupy a portion of the sidewalk around said building, and if it shall be a violation of any such city ordinance to have such fruit stand project over or occupy a portion of said sidewalk, then it shall be the right and privilege of the lessee herein to remove said fruit stand, together with all shelving, stands and other fixtures and appurtenances thereto from said sidewalk, and said Condos Bros. shall give him a space inside of said building now occupied by Condos Bros., in which space he shall be permitted to erect said fruit stand, together with all shelving, stands and fixtures thereto belonging and shall be permitted to conduct said fruit stand within said building. In ·the event it becomes necessary to remove said fruit stand inside of the building now occupied by Condos Bros., the lessee herein shall be given a space in the corner of said building on Main street and Texas avenue, said space to be a square, each side of which is to be five (5) feet in which to erect said stand. In the event said stand is erected in said building, all the privileges and rights· of both parties to this lease shall be the same as if said stand had remained upon the outside of said building."

From the whole of this contract, it is apparent (while not expressly stipulated therein) that the understanding between the parties was that the leased premises were to be occupied by the lessee solely as a fruit stand, if at all, but there is no provision in the writing that it shall be so occupied; in other words, it is no part of the contract that it shall be so occupied. There are many provisions in this writing which binds the lessor to furnish in lieu of the structure described the space five feet square inside of the building, the existence of any one of which is sufficient to require the lessor to comply therewith. One of these is that, if it shall be a violation of any city ordinance to have such fruit stand to project over or occupy any portion of said sidewalk, etc., there being such an ordinance at the date of the contract, eo instanti, upon the signing of this contract, or at any time thereafter within the life of his contract, the lessee was entitled to have and occupy the five-foot space within the building, and the mere knowledge that the structure leased was being used by the lessee in a business prohibited by the ordinance of the city could not vitiate the contract as written. McKinney v. Andrews, 41 Tex. 363; Bishop v. Honey, 34 Tex. 245; Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808.

The stipulations in the contract above quoted expressly negative the idea that it should be used in violation· of any ordinance, and its clear meaning is that the fruit stand is leased, provided it can be lawfully occupied by the lessee, and if it cannot, then the five-foot space is leased in its stead, by the same writing.

[3] The premises were taken over by appellants from Condos & Bros., and the uncontradicted evidence shows that appellants had constructive and actual notice of appellee's lease when they accepted rents. Condos told them of the lease, and it was recorded on the same day that the appellants took their bill of sale. Thereafter, with such notice, appellants accepted rents, by which acts they ratified the contract, so the court did not err in refusing the special charge requested upon ratification.

[4] Appellant in their sixth assignment complains that the appellee voluntarily surrendered the premises, and therefore was not entitled to recover for future profits under his contract of lease. The facts are that appellants sequestrated the premises, appellee replevied, and thereafter in open court, to avoid going to trial on the cross-action of appellants for rent and possession, he agreed to surrender the premises with the express understanding in open court, and the court's order so states, that neither parties' rights should be in any way prejudiced by the surrender of the property to appellants. It cannot be held that under such circumstances the appellee also abandoned his right to recover damages for the breach of the contract sued on.

For the reasons given, the assignments are overruled and cause affirmed.

WALTHALL, J. (dissenting). On the 1st day of May, 1911, James Condos & Co. held a lease on a building owned by H. C. House, on the corner of Texas avenue and Main street in the city of Houston, Tex., and were occupying said building and conducting therein a confectionary. On the said date, Louis Comves, appellee, was a fruit dealer, and under a parol arrangement with Condos & Co. was in possession of and using during the month of May a certain fruit stand partly on the outside of said building and on the sidewalk of the corner of Main street and Texas avenue, immediately in front of the Condos & Co. building, including about 12 or 18 inches in depth in the wall of the building, with an understanding between them that Condos & Co. would give appellee a written lease for the space he occupied of said building, and with the further understanding that if the city complained of the fruit stand being placed on the outside of the building, and he should not be permitted, under an ordinance of the city of Houston then in force, or any other ordinance of the city, to occupy the portion projecting over and covering the sidewalk, Condos & Co. in that event would give appellee a five-foot square

space on the inside of the said building, and that for the use of said space, whether for that on the outside and the 12 or 18 inches of the wall, or the space to be occupied on the inside of the building, appellee was to pay as rent to Condos & Co. the sum of $200 on the first of each and every month, which he complied with, paying to them the said rent for the months of May and June. On the 24th day of May, 1911, Condos & Co. sold their business, stock of goods, fixtures, the lease on the building, and their subleases to the appellants, who were to close up the deal and go into possession on the 1st day of July following, which was consummated as agreed. On the 1st day of July, appellee and Condos & Co. entered into a written lease, reciting that it was made on the 1st day of May, 1911, by the terms of which Condos & Co. leased to appellee the following:

"That certain fruit stand located on the southeast corner of Main street and Texas avenue in the city of Houston, Harris county, Texas, said fruit stand being upon the outside of the one-story brick building now occupied by Condos Bros. as a candy store, soda fountain and ice cream parlor, said fruit stand extending from the Main street entrance of Condos Bros. to the corner of the building on Texas avenue and extending thereto down Texas avenue to the back entrance of Condos Bros. place of business, together with all shelving, stands, and other fixtures belonging thereto and which are a part thereof, said fruit stand to be rented by the lessee at a monthly rental of two hundred ($200.00) dollars in advance, beginning on the 1st day of May, 1911, and thereafter on the 1st day of each and every month until the expiration of said lease; said lease being from May 1, 1911, until April 1, 1914."

The fourth paragraph of said lease recited that:

"It is expressly understood and agreed that in the event the city of Houston complains of this aforesaid fruit stand being placed upon the outside of said building and projecting over and covering a portion of the sidewalk in front and on the side of said building, or in the event that any city ordinance which is now in force or which may hereafter be passed by the city of Houston shall make it impossible for said fruit stand to remain upon the outside of said building or to project over or occupy a portion of the sidewalk around said building, and if it shall be a violation of any such city ordinance to have such fruit stand project over or occupy a portion of said sidewalk, then it shall be the right and the privilege of the lessee herein to remove said fruit stand, together with all shelving, stands and other fixtures and appurtenances thereto from said sidewalk, and said Condos Bros., shall give him space inside of said building now occupied by Condos Bros., in which space he shall be permitted to erect said fruit stand, together with all shelving, stands and fixtures, thereto belonging and shall be permitted to conduct said fruit stand within said building."

The same paragraph then describes the "space to be a square each side of which is to be five feet," and that "all the privileges and rights of both parties to this lease shall be the same as if said stand had remained upon the outside of said building." The lease was signed and acknowledged by both parties on the 1st day of July, 1911, and on same day filed for record.

It was agreed on the trial by plaintiff and defendants that on and prior to the 1st day of May, 1911, and during the entire period in which appellee occupied and claimed to be entitled to the possession of the premises in controversy, article 694 of the Revised Code of Ordinances of the City of Houston was in force and effect, and at the time of the trial was in force and effect. The ordinance referred to made it unlawful for any person or persons to store or expose for sale or sell on any sidewalk or street in the city of Houston, any fruits, nuts, candies, tobacco, soda water, or any other goods, wares, or merchandise, or to occupy the sidewalk with any booth or frame structure for carrying on any business or occupation.

The bill of sale and assignment delivered to appellants by Condos Bros. on July 1, 1911, among other things, provided:

"The said Condos Bros., for the consideration aforesaid, transfer, assign and deliver unto the said Moye Wicks, Jr., and associates, all written subleases executed by them in favor of other parties, sublessees, to any portion of the premises described in the leases from Henry C. House to said Condos, and especially the sublease to the cigar stand and the fruit stand and to the portion of said premises now being used, as a moving picture show and the said Moye Wicks, Jr., and his said associates, are to respect said subleases and to receive the benefits therefrom according to the terms and conditions expressed in said subleases."

It was admitted that appellee paid the rent monthly for the use of the premises, to the appellants from and including the month of July, 1911, to and including the month of January, 1912. Early in January, 1912, the authorities of Houston required the appellee to remove his fruit stand from the sidewalks. Appellee called on appellants to give him the five-foot square on the inside of the building, and appellants refused to do so. Appellee paid no rent to appellants after January, on account of their refusal to let him have the five-foot square, but continued to occupy the small space in the wall of the building until May 25, 1912, when he surrendered it to appellants. Appellee set up the above facts substantially in his various pleadings, and alleged that appellants had actual and constructive notice of his possession and lease, and that by the appellants receiving the rents with knowledge of all the facts ratified the terms of the lease contract appellee had with Condos & Co. Appellee prayed for injunction against appellants, restraining them from interfering with him in taking possession of and using for his fruit store the five-foot square on the inside of the building, then occupied by appellants, and for damages. The appellants demurred generally, and both by special exception and answer claimed that appellee's lease contract with Condos & Co. was wholly illegal and void, because of the city ordinance above stated; denied knowledge of appellee's lease contract; denied any acceptance or ratification of appellee's said lease contract. Defendants pleaded a cross-

action for possession of the space occupied by appellee, and, the appellee having sequestrated the small space in the wall above mentioned, appellants asked judgment against appellee and his sureties on the replevin bond for their damages occasioned by the wrongful withholding of the said space. On the trial, the court heard the evidence and submitted the case to the jury for their finding on a general charge. After the jury had been out for some time, the court called the jury in, withdrew the general charge, and instructed the jury to return a verdict for appellee on the ground that appellants had ratified the lease contract by an acceptance of the rent, and submitted to the jury the rule for the measure of damages for them to adjust and find. The jury, under the instruction given, found a balance for appellee and fixed his net damages at $905. The court rendered judgment for appellee and against appellants for possession of the property called for in the lease contract from Condos & Co. to appellee, giving him the further use of same until the 1st of April, 1914, and judgment for the sum of $905. Other features of the case will be stated· more fully where necessary under the assignments of error to which they apply.

Appellants' first, second, and third assignments of error and the propositions thereunder, in different ways, challenge the validity of the lease contract upon which the suit is brought, claiming that it is illegal, wholly void, and unenforceable in any of its parts, because of the ordinance of the city of Houston, then and at all times thereafter in force, forbidding the use of any of its sidewalks for the· purposes mentioned in the lease. Was the lease contract void, because illegal, in whole or in any part of it?

It has been said that the right of private contract is no small part of the liberty of the citizen, and the most important functions of courts are to maintain and enforce it, rather than to enable parties to escape from their obligations on the pretext of public policy, unless the contract contravenes public right or public welfare or some law. If courts were unmindful of such important duties, it would be a denial to parties capable of contracting of the power to make their own contracts, and assuming the guardianship of capable people, and largely destructive of property. But while that is true, it is equally important that such fundamental rights conform to the necessities of the social state and the liberty of contract to be controlled by a reasonable exercise of the police powers. It has therefore been uniformly held that parties cannot be permitted to contract with reference to those matters which, for the good of all, should be suppressed or restrained. It would be an unprofitable and endless task to enumerate the conditions under which courts have held contracts void and refused to enforce them. At common law, a consid-

eration was illegal when it violated rules of religion, morals, or public decency, or contravened public policy or law. It is so with us. We have many statutes prohibiting certain acts, and any contract to do the forbidden act creates no legal obligation. In the case of Heirs of Hunt v. Heirs of Robinson, 1 Tex. 748, where appellant sought to reverse the judgment of the trial court on the ground that the contract at the time it was made was contrary to the law forbidding the alienation of the land—the subject of the contract —Justice Lipscomb said:

"It is believed to be a rule of universal application that to undertake to do an act forbidden by the law of the place where it is to be done is an invalid agreement and imposes no legal obligation. There is a moral obligation in the absence of a penalty to· obey the law. Courts are organized under the law and are required to administer it, and, it would seem to be an anomaly were they so far to sanction its violation as to give effect to a contract forbidden by the law that they are bound to respect and enforce."

In that case, the court say that a distinction was once made in the English courts when the law duly forbid the doing of an act, and where it imposed a penalty for doing it, but the current of authority is now destructive of any such distinction, holding all contracts against law alike invalid.

But it is claimed that the fourth paragraph of the lease contract removes any feature of illegality in the contract, and that it was not unlawful in the instant case for the parties to agree, as in the fourth paragraph, that in the event the city of Houston complains of the fruit stand being placed on the outside of the building, or the city ordinance then in force should make it impossible for the fruit stand to remain on the sidewalk or project over it, then it shall be the right and privilege of the lessee to remove the fruit stand, shelving, stands, fixtures, and appurtenances from the sidewalk, and the lessors should give him space on the inside of the building; that the said fourth .paragraph inserted made a contract in every way relieved of any feature of it being in violation of the city ordinance. If there had been no city ordinance prohibiting the permanent and exclusive use of the sidewalk for purposes of a fruit stand by a private person, such use, under the authorities I have examined, would be contrary to public policy, and a contract so providing would be void. The following cases so hold: Heineck v. Grosse, 99 Ill. App. 441; Ryan v. Allen, 138 Ill. App. 52; Pagames v. Chicago, 111 Ill. App. 590. Chief Justice Marshall in discussing Armstrong v. Toler, 11 Wheat. 261, 6 L. Ed. 468, said:

"I understand the rule, as now clearly settled, to be that where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not enforce it. And if the contract be in part only connected with the illegal transaction, and growing immediately out of it, though it be in fact a mere contract, it is equally tainted by it."

In the same case, the learned Chief Justice said:

"I should consider a bond or promise afterwards given * * * to constitute a part of the res gestæ, or of the original transaction, though it purports to be a new contract, for it would clearly be a promise growing * * * out of and connected with the illegal transaction."

Judge Stayton quoted and applied the above statement of the law in Seeligson v. Lewis & Williams, 65 Tex. 215, 57 Am. Rep. 593. I have examined many cases similar to the case at bar, and in every case the courts have held that an abutting owner of property has no right, nor can the city confer any right, upon him to appropriate to his sole, private use any portion of the sidewalk, and therefore an agreement, by which an abutting property owner attempted to lease or grant the right to erect a stand upon the sidewalk is against public policy, and where that policy has been expressed by a city ordinance, the act is both against public policy and the law and is void.

I do not believe that the cases referred to by the court in the majority opinion sustain the conclusion reached. In the case of McKinney v. Andrews, 41 Tex. 363, appellant sought to recover the value of a wagon and five yoke of steers, which she alleged was hired by her from her intestate for the purpose of hauling cotton from the county of Grayson to San Antonio, and which, as she avers, appellee promised to return to her intestate or account for its use and reasonable value. Appellee answered that the wagon and team were used with the knowledge and consent of appellants' intestate for the purpose of transferring cotton for the Confederate States from the interior of the state to San Antonio, to be exchanged for powder, lead, and other munitions of war to be used in carrying on the war against the United States, and that, being against public policy or for an illegal purpose, was void. The court simply held that mere knowledge of the unlawful purpose (if it was unlawful—a question which Judge Gould did not decide) was too remotely connected with it to avoid the contract. The suit was for the recovery of the value of the wagon and oxen, which appellee admitted he had sold and appropriated the proceeds, and was not for their hire. The court held that it might be that a recovery could not be had on the contract for the use of the wagon and team, which was tainted with illegality.

In Bishop et al. v. Honey, 34 Tex. 245, the suit was by a mechanic on a building contract, in which the defendant answered that she had the house built for a house of prostitution, and that plaintiff knew that fact when he undertook to build the house, and that the contract, being contrary to good morals, was void. The court held that, there being no allegation that plaintiff was to be concerned or interested in the contemplated illegal use of the building, he could recover for the value of the labor and material used in erecting the building. But in that case, the court held that:

"If the plaintiff is in any way the gainer by, or the partner in, an illegal contract, one which is contra bonos mores, he cannot recover upon such contract; he cannot recover upon it if it be shown that he is particeps criminis."

The court in that case said that the house was not to be paid for out of the proceeds of an illegal vocation, but was to be paid for as the work progressed.

The only other case referred to by the court in the opinion is Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808. In this case, Corbett made a written contract with Labbe by which Corbett agreed that Labbe should bear all expenses and have the use of 1,000 picked ewes for the period of three years, and same were delivered. The sheep were valued at $2,750, and for their use Labbe was to pay semiannually a sum equal to 12 per cent. of their value, and at the end of three years, Labbe was to redeliver to Corbett the same number of picked ewes, and on failure to do so should pay the agreed value. At the end of the time the sheep were not redelivered, and the action was to recover their value. One of the answers made by Labbe was that the sheep were infected with a contagious and infectious disease, and that the false and fraudulent representations of Corbett that they were not so diseased caused him, Labbe, to drive the sheep under the contract beyond the limits of his own land and upon the public highway, a violation of the law, the plaintiff Corbett knowing the diseased condition of the sheep. The trial court sustained the plaintiff's demurrer to the answer, setting up the above facts. Judge Stayton, in rendering the opinion of the court, said:

"The pleadings do not allege that appellee had knowledge of the fact that the appellant intended to drive the sheep along or upon public roads in taking them from one range to another, but do allege that the appellant was caused or induced so to drive them by the representations made by the appellee to the effect that the sheep were not affected with the * * * diseases named; that is, that he was thus induced to do an act which, as to him, in the absence of knowledge that the sheep were so diseased, would not be penal in its character, which he would not have done had he known the sheep were diseased. * * * The uses to which the parties contemplated that the ewes should be put, the breeding of lambs and the growing of wool, were lawful in themselves. The contract gave the appellant the right to them for these or any other lawful uses for the named period; but there is nothing in it tending to show that, for the accomplishment of these purposes, any act forbidden by law was necessary, contemplated, or required by the contract."

In the instant case, both parties were to benefit by a violation of the city ordinance.

But the counter propositions of appellee to the assignments and propositions of appellants are to the effect that the lease contract is based upon a valid consideration, is divisible, and is therefore not void, but is enforceable as to the legal part with reference

to the space five feet square on the inside of the building. As all of the issues under these assignments and propositions thereunder and appellee's counter propositions might be considered in the discussion under the quære presented by appellee in his argument under his first counter proposition to appellant's first assignment of error, we quote it:

"Quære: It being admitted that it was unlawful to lease part of the sidewalk, as being opposed to a city ordinance in force at the time, was the contract severable, so as to be upheld as to the legal part with reference to a space five feet square on the inside? This is the issue."

Appellee's counter proposition, or rather quære, it will be seen, concedes to be illegal the feature or portion of the lease contract that violates the city ordinance, because to lease the fruit stand, situated as it was partly on the sidewalk, would not only be a lease of the portion of the sidewalk occupied by the fruit stand, but the use of the portion of the fruit stand on the sidewalk would be to store, and expose for sale and sell the commodities of the fruit stand, on the sidewalk, the very thing prohibited by the ordinance of the city. The next part of the quære presents the question, Was the contract severable, so as to be upheld as to the legal part? The quære, then, assumes that the legal part was the portion of the lease contract with reference to the five-foot square on the inside of the building. I agree with that portion of appellee's statement that a part of the lease contract is in violation of the city ordinance, and that the portion of the lease contract that violates the ordinance cannot be enforced. As to whether the contract is severable, and, if severable, what part is in violation of the city ordinance are the determinative questions in the case. Appellee's suit in the trial court assumed that the lease contract was severable, and that the legal part of it was with reference to the five-foot square space on the inside of the building. If the negative of either one of these propositions is the proper construction of the lease contract, appellee has no cause of action. Let us assume for the purpose of discussing the last of the two propositions, first, that the lease contract is severable. How shall we separate or sever the contract so as to consider the parts? We are not aided by appellee's brief in making a severance of the contract. We must, however, follow the contract and separate it as the parties to the contract contemplated it should be, if it is severable. A part of the fruit stand was in the wall of the building and did not occupy or trespass on any part of the sidewalk, and a part of the stand did occupy a part of the sidewalk. The parties to the contract contemplated that the part of the fruit stand occupying the sidewalk would have to be removed on account of the ordinance, and undertook to provide for that portion of it by giving in lieu of it the five-foot square space on the inside of the building. We then necessarily divide the contract as the parties to it divided the fruit stand—a part of it on the sidewalk and a part of it not on the sidewalk. The part on the sidewalk was the part outlawed by the city ordinance. When the sidewalk part of the fruit stand was removed, the lessee demanded of the lessor its complement on the inside—the five-foot square space contracted for. The lessee was not interrupted in his use of the part not on the sidewalk, and he remained in possession of it for some time thereafter, and until he voluntarily surrendered it. The portion of the lessee's rent money, for the part of the fruit stand on the sidewalk before the removal of the fruit stand from the sidewalk, he tendered to the lessor for the space inside as the consideration for the space on the inside. That was the part, however, that was in violation of the city ordinance, and I necessarily conclude it to be the illegal part. But that was the part appellee was trying to enforce by his suit, that is, his demand for the space on the inside. He had no demand to make for the part not on the sidewalk, and made none. It seems to me that it necessarily follows that the lease contract was illegal in part, and that the illegal part, as to the lessee, was as to the portion of the consideration agreed to be paid for the sidewalk part of the fruit stand and rendered to the lessors, when removed, for the space on the inside, and as to the lessor, the illegal part of the contract was a lease of the sidewalk part of the fruit stand and the agreement to give the space on the inside in lieu of it should the city ordinance be enforced and the lessee be required to remove the stand. If appellee's suit was a demand for the enforcement of the illegal part of the lease—and I hold that it was—he could not maintain it. If the basis of his suit was the illegal part of the contract, the appellants could not ratify it and make it legal by an acceptance of the rents.

The construction of the lease contract was a matter of law for the court, and if its illegal feature did not appear on its face, it did appear when the undisputed fact of the city ordinance was shown. I think the court should have instructed the jury to find against the appellee.

I am of the opinion that the case should be reversed and remanded.