## BURTON–LINGO CO. v. FEDERAL GLASS & PAINT CO.

### No. 1003.

Court of Civil Appeals of Texas. Eastland.

Oct. 21, 1932.

Rehearing Denied Nov. 18, 1932.

■■■■■

Thomas R. Smith, of Colorado, Tex., for appellant.

H. R. Bondies, of Sweetwater, for appellee.

HICKMAN, C. J.

The appeal is from a judgment in favor of appellee against appellant on an itemized, verified account for goods, wares, and merchandise alleged to have been sold and delivered by appellee to appellant at the special instance and request of J. M. Pearson, who was alleged to have been duly authorized to bind appellant by his contract of purchase. The facts out of which the litigation grew are briefly as follows:

On July 25, 1929, a written contract was executed by and between D. S. Bodzin, the owner of a building in the city of Colorado, and appellant, Burton-Lingo Company, and J. M. Pearson, contractors, by the terms of which contract the contractors, for a stated consideration, obligated themselves to provide all the material and perform all the work mentioned in the specifications and shown on the drawings prepared by an architect for the store front to a building owned by Bodzin. This contract was fully performed by the contractors. Pearson superintended the work, and appellant financed it. Certain materials required for the completion of the contract were not carried in stock by appellant, and Pearson purchased them from appellee. This suit is for the purchase price of such materials. Appellee's salesman testified: "After the goods were delivered on the job, and before they were all installed, I went to Colorado for the purpose of seeing the manager of Burton-Lingo Company. I purposely went there to see him before they were installed. I wanted to know from him that they would be paid for before they went into the job. I knew when the goods were delivered and timed my visit accordingly. I called upon Mr. R. O. Pearson (appellant's manager), and talked with him about the goods. I told him what J. M. Pearson had said about Burton-Lingo Company paying for them. We talked about my company delivering these goods and he knew about it. He knew they were going into the Bodzin job. I saw the goods on the job at that time. The result of our talk was that R. O. Pearson told me that Burton-Lingo Company would pay for the goods. I believe he said they would pay for them when they got the loan on the property."

R. O. Pearson, appellant's manager, gave the following testimony concerning the matter: "I don't know when I first learned that the Federal Glass & Paint Company was furnishing the plate glass and stuff on this Bodzin job. We did not have that class of goods in our stock in Colorado and it had to be ordered from somewhere. I knew that it was being installed in the job as the work progressed. At the time I talked with Mr. Battle (appellee's salesman), work on the job had not been finished. I do not remember whether all the glass had been installed at that time or not. Maybe some of it had not been installed. I knew it was coming from the Federal Glass & Paint Company. I refused to pay this bill because I understood it was ultra vires. By ultra vires I mean that my company could not contract with Mr. Bodzin like it did."

This witness further testified: "Burton-Lingo paid the labor bills on this job. You might say that they financed the job. Burton-Lingo Company got all the money that was paid by Bodzin on this job. J. M. Pearson did not get a cent. We furnished the material and paid the labor. J. M. Pearson did the work and was the contractor. I did not have but one conversation with Mr. Battle about the J. M. Pearson account. I did not tell him that Burton-Lingo Company would pay for it. I told him that we would see about it, or words to that effect."

Appellant is a domestic corporation. The purpose for which it was organized is set forth in its charter as follows: "Such corporation shall be formed for the purpose of buying and selling goods, wares and merchandise of any description at wholesale and retail."

The principal defense to appellee's suit relied upon by appellant was that its contract with Bodzin, upon which it claimed appellee's suit was based, was ultra vires, null, and void. Many issues were submitted to the jury, and upon the answers to such issues judgment was rendered in favor of appellee. Appellant briefs its case upon twenty-six assignments of error, under which many questions of law are presented. Appellee by cross-assignment presents that its request for peremptory instruction should have been granted. We have concluded that this cross-assignment is well taken, and, for that reason, it becomes unnecessary to consider appellant's assignments.

■ Assuming, without deciding, that the contract between appellant and Bodzin was ultra vires, it would constitute no defense to this action. Appellee's suit is based, not upon the contract between appellant and Bodzin, but upon an account for goods, wares, and merchandise alleged to have been sold by it to appellant. The purpose for which appellant was created, as above shown, was

"buying and selling goods, wares and merchandise of any description," and it would be no defense to a suit for the purchase price of goods, wares, and merchandise bought by appellant for it to set up that same were bought to be used in the performance of its ultra vires contract. McKinney v. Andrews, 41 Tex. 363; Kottwitz v. Alexander's Representatives, 34 Tex. 689; Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; Reed v. Brewer, 90 Tex. 144, 37 S. W. 418.

The controlling question in this case, as we view it, is whether or not appellant was bound by the contract of J. M. Pearson. Were appellant an individual and not a corporation, there would be no question as to the relation between it and J. M. Pearson. Their contract made them joint adventurers, each having the authority to bind the other by contracts made in furtherance of their joint enterprise. Does the fact that appellant is a corporation affect its liability on the executed contract of Pearson of which it has received the benefits? This question is so clearly discussed by Justice Boyce in Millers' Indemnity Underwriters v. Patten (Tex. Civ. App.) 238 S. W. 240, 245, that we prefer to adopt his language as our own, wherein he states: "It is the law that a corporation, unless its charter authorizes it to do so, may not enter into a partnership. * * * But, when the parties have entered into such relations, and done business as partners, the law regards the acts already performed practically in the same way as if there had been a real partnership, though they are not perhaps strictly speaking partners. Some of the authorities refer to them as 'joint adventurers,' and the liability arising from such relationship as that of persons engaged in a joint enterprise. * * * The rights of the parties engaged in such an enterprise and those dealing with them, as to past transactions, are settled on practically the same basis as if they had been partners. * * * For practical purposes it would make no particular difference whether the relation would have been that of a partner, strictly speaking, or joint operators of the plant."

In the instant case the purchase of the goods from appellee by J. M. Pearson was a past transaction, of which appellant received the benefits, and its liability to pay for these goods is just the same as if it had been a legal partner of J. M. Pearson. "Contracts for the purchase of goods used in carrying on a business conducted by joint adventurers, although made by one member only, render all of them liable for the contract price." 33 C. J. p. 872, footnote 30 (d). The evidence presented no issuable fact as to the relation between appellant and J. M. Pearson, for it is conclusively shown by their written contract with Bodzin. Neither was there an issuable fact as to the contract price of the goods sold by appellee to Pearson. A peremptory instruction in appellee's favor would therefore have been authorized. The errors, if any, of the lower court, committed upon the trial of the case, become harmless, since it rendered the only judgment which could have been rendered properly upon the pleadings and the evidence.

That judgment will therefore be affirmed.