NOBLES et al. v. LONG. (No. 1848.)

(Court of Civil Appeals of Texas. Texarkana. March 14, 1918.)

1. VENDOR AND PURCHASER ⚫☞275 — VENDOR'S LIEN—PURCHASER OF NOTE.

If one who, pursuant to agreement with vendee to carry the debt, purchased the purchase-money notes was entitled to judgment for the amount of such notes, he was also entitled to judgment foreclosing vendor's lien securing the notes.

2. APPEAL AND ERROR ⚫☞934(1)—FAILURE TO CHALLENGE JUDGMENT—PRESUMPTION.

Where assignment challenges judgment for the purchaser of purchase-money notes, only in so far as it grants foreclosure of vendor's lien securing the notes, it will be assumed that defendant was entitled to judgment for the amount of the notes.

3. NOVATION ⚫☞8—NATURE AND REQUISITES IN GENERAL.

Purchase-money notes, purchased by defendant pursuant to agreement with vendee to carry debt, were not novated, merged, and extinguished by subsequent transactions between the parties interested, evidenced by a judgment, deeds, and notes, canceled by later decree, so as to deprive defendant of the right to recover on them, since, to operate as a novation extinguishing the notes, subsequent transactions must have been valid.

4. VENDOR AND PURCHASER ⚫☞261(3)—PURCHASER OF NOTES — ENFORCEMENT OF VENDOR'S LIEN.

Where a vendor did not, at time of conveyance, agree that mother of vendee who furnished money to make first payment should have 46 acres of the 160 acres as her property, and defendant, who pursuant to agreement with vendee to carry debt purchased notes given in payment of balance, did not so agree, defendant was entitled to enforce vendor's lien, securing notes, against the entire tract, although the vendee made the agreement as stated, with the mother.

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Suit by Will Nobles and wife against T. T. Long, in which Mary Nobles intervened. From an adverse judgment, plaintiffs and intervener appeal. Affirmed.

By a deed dated October 31, 1911, Mrs. D. Smith conveyed 160 acres of land to plaintiff in error Will Nobles, the consideration being $400 then paid to her and said Nobles' three promissory notes, one for $600, and the

others for $500 each, payable to her one, two, and three years, respectively, after said October 31, 1911, and secured by a vendor's lien retained on the land. Nobles was a married man, and purchased the land for use as a homestead. He afterwards so used all of it except 46 acres in the northwest corner of the tract, which were occupied and used as a homestead by his mother, plaintiff in error Mary Nobles. It seems that she furnished the $400 paid on the land at the time Will Nobles purchased it, and that it was agreed between them that she should have said 46 acres. Before any of the notes mentioned matured one Nash became the owner of them, he having acquired same in due course of trade for value. Will Nobles was not able to pay the notes as they matured, and wished to arrange with a loan company to carry the debt for him. Defendant in error Long, in consideration of $100 which Will Nobles agreed to pay him, undertook to so arrange with a loan company, and in pursuance of his undertaking, it seems, purchased the notes held by Nash, then aggregating, with interest which had accrued thereon, the sum of $1,760. Thereafterwards, by a deed dated October 16, 1913, Will Nobles conveyed the land to Long, in consideration, it was recited in the deed, of $900 paid to him by Long and the assumption by Long of the payment of the notes he had purchased of Nash. As a matter of fact no part of the $900 mentioned in the deed as having been paid by Long was paid by him. Alleging that he was induced to execute the deed by fraud on Long's part, Will Nobles commenced a suit against Long to cancel same. Pending the suit Long, by a deed dated June 23, 1914, reconveyed the land to Will Nobles, the consideration recited in the deed being the latter's promissory note, secured by a lien on the land, for $2,250 payable to Long July 1, 1914. The $2,250 note was not paid when it matured, and Long commenced suit on it, seeking thereby a recovery against Will Nobles for the amount of the note and a foreclosure of the vendor's lien retained to secure it. This suit and the one commenced by Will Nobles against Long to cancel the deed made by the former to the latter were consolidated by an order of the court. The consolidated case was disposed of by an agreed judgment, rendered March 25, 1916, in favor of Long for the land as against the Nobles and Ross Huffmaster, who had intervened therein; Will Nobles and his wife having conveyed the land to him by a deed dated March 21, 1916. It was provided in the agreement for the judgment rendered in the consolidated case that after judgment for the land was entered in favor of Long he should convey it to Huffmaster for the latter's two notes, one for $1,400, payable in 20 days, and the other for $866.91, payable in one year, to be secured by a trust deed to be executed by Huffmaster on the land when it was so conveyed to him. In compliance with the agree-

ment, Long by a deed dated March 27, 1916, conveyed the land to Huffmaster, who at the same time executed and delivered to Long his two notes for $1,400 and $866.91, respectively, and to Nestor Morrow a deed conveying the land to him in trust to secure the payment of the notes. Default having been made in the payment of the $1,400 note when it matured, Morrow as trustee sold and conveyed the land to Long June 6, 1916. This suit was by Will Nobles and his wife against Long to vacate the judgment referred to, and to cancel the various deeds and notes (except the deed from Mrs. Smith to Will Nobles and the notes made by him to Mrs. Smith) mentioned, on the ground of fraud. Mary Nobles, the mother of Will Nobles, intervened in the suit, claiming that she owned 46 acres of the land by purchase from said Mrs. D. Smith. On findings of his own and findings made by a jury on special issues submitted to them, the court rendered judgment (1) vacating the judgment referred to and canceling the deeds and notes mentioned. except the deed from Mrs. Smith to Will Nobles and the notes made by him to Mrs. Smith; (2) in favor of Will Nobles and his wife against the other parties, except his mother, Mary Nobles, for the land; (3) in favor of Long against Will Nobles for $2,-432.17 as the amount, principal, interest, etc., due on the three notes made by him to Mrs. Smith, foreclosing, as against said Will Nobles and his wife, and as against Mary Nobles, his mother, and as against Ross Huffmaster and one Aston, who were parties to the suit, the vendor's lien retained on the land to secure the payment of said three notes, directing a sale of said land and providing that if the proceeds of such sale were more than sufficient to pay said sum of $2,432.17 the excess to the amount of $400 should be paid to said Mary Nobles; (4) devesting title in the other parties to 46 acres out of the northwest corner of the 160 acres, and vesting same in said Mary Nobles, but subject to the foreclosure in favor of said Long; and (5) that said Huffmaster and Aston take nothing except that the latter "keep and hold possession of a portion of the land during the remainder of the present calendar year" (1916). The writ of error is by Will Nobles and wife and his mother, Mary Nobles.

Huffmaster & Huffmaster and Terry & Brown, all of Kaufman, for appellants. Woods & Morrow, of Kaufman, for appellee.

WILLSON, C. J. (after stating the facts as above). The first assignment is as follows: "The court erred in rendering judgment for the defendant Long foreclosing the notes mentioned in the judgment herein and holding that defendant was entitled to a foreclosure for vendor's lien upon the land in controversy."

[1, 2] It will be noted that the assignment challenges the correctness of the judgment only so far as it is in Long's favor for a fore-

closure of the vendor's lien retained to secure the payment of Will Nobles' notes to Mrs. Smith. It is clear it is not erroneous in that respect; for if Long was entitled to judgment for the amount of those notes (and it must be assumed that he was, in the absence, as is the case, of an assignment attacking the validity of the judgment in that respect), he plainly also was entitled to the foreclosure awarded to him.

[3] The proposition under the assignment indicates that the Nobles construe it as an attack on the validity of the judgment in so far as it awards Long a recovery against Will Nobles of the amount of the latter's notes to Mrs. Smith. If we so construed the assignment we nevertheless would overrule it; for we do not agree that those notes were so "novated, merged and extinguished" in the transactions evidenced by the judgment, deeds, and notes canceled by the decree as to deprive Long of a right to recover on them. To operate as a novation extinguishing those notes the new contracts must have been valid, and the court expressly determined that they were not. 29 Cyc. 1130; Davis v. Wynne, 190 S. W. 510.

[4] Mary Nobles insists that the judgment is erroneous in so far as it forecloses the vendor's lien on the 46 acres claimed by her. The contention is based on testimony showing that she furnished the $400 paid to Mrs. Smith at the time she conveyed the 160 acres to Will Nobles, and on the assumption that the testimony also showed that "all the parties" to the suit had agreed that the 46 acres "was to be her property." The testimony did not show the existence of such an agreement between Mary Nobles and Mrs. Smith, nor between Mary Nobles and Long. It did show, and the jury found, that there was such an agreement between Mary Nobles and her children, and the court determined by his judgment that as between them Mary Nobles was the owner of the 46 acres. Of course Mary Nobles and her children by an agreement among themselves could not deprive Mrs. Smith nor her assignees of a right to enforce the lien retained by her on the 160 acres she sold and conveyed to Will Nobles to secure the payment of the notes Will Nobles made to her.

There is no error in the judgment, and it is affirmed.