### FRESHWATER v. HOYT et al. *
(No. 505–3928.)

(Commission of Appeals of Texas, Section A. March 12, 1924.)

**1. Appeal and error ☞1091(1)—In state of record held that Court of Civil Appeals not presumed to have found certain fact inferentially.**

Jury's findings that purchasers did not make any independent investigation as to status of possession of the property, but relied on vendor's false representations, being amply supported by the evidence, and the Court of Civil Appeals having refused a motion to find to the contrary, it will not be presumed that such court found inferentially, as a fact, that the purchasers undertook an independent investigation as to the true facts of possession.

**2. Mines and minerals ☞74—Purchasers by merely visiting oil land not estopped to claim they relied on vendor's misrepresentations as to possession.**

Though purchasers of lease of oil land, before entering into the contract went to see the land relative to its location and proximity to oil production, they not having undertaken any investigation as to who was in possession, and having been under no duty to do so, are not estopped to claim that they relied on vendor's misrepresentations as to possession.

**3. Mines and minerals ☞74—Under facts held no laches by purchasers seeking to rescind for fraud in tendering return of assignment of oil lease.**

Where purchasers of oil lease, immediately on learning of falsity of vendor's representation as to possession of the oil land, demanded return of their notes and cancellation of the contract, and were told by vendor that he had sold them, and immediately on his afterwards admitting ownership thereof, by pleading, made formal tender of the assignment of the lease, which was in escrow under the contract, held, that there was nothing on which to predicate the plea of laches of the purchasers in tendering to vendor the assignment of the lease.

**4. Appeal and error ☞1177(8)—Rendering, instead of remanding, on reversal held proper.**

Where fact, finding of which was unsupported by pleading or evidence, was immaterial, it was not a case for remanding, instead of rendering, on reversal of judgment based on the finding.

**5. Mines and minerals ☞74—Purchasers' right to rescission for vendor's statement that he was in possession held unaffected by statement being opinion and innocently made.**

The parties to a sale of an oil lease not having equal means of information as to the facts, but the vendor being supposed to know the facts, and the purchasers having the right to rely on his knowledge as well as on the truthfulness of his statements, he assuming to know and state the facts in regard to his possession of the land and as to any adverse claims thereto, and making the statement as a fact, and not as a mere opinion, purchasers' right to rescission would be unaffected by vendor pleading and proving that his false statement that he was in possession was a mere expression of opinion, and made without intention to deceive or mislead.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by the First National Bank of Chester, W. Va., against F. C. Hoyt and another, who prayed that Phillip Freshwater be made a party defendant, and for rescission of the contract, pursuant to which the notes sued on were given, and for other relief. After Freshwater answered, the action continued as one between him and the original defendants only. Judgment for Freshwater was reversed by the Court of Civil Appeals (247 S. W. 637), and he brings error. Affirmed.

Weeks, Morrow & Francis, of Wichita Falls, for plaintiff in error.

P. B. Cox, Campbell & Campbell, and Cox, Fulton & Myers, all of Wichita Falls, for defendants in error.

BISHOP, J. Plaintiff in error, Philip Freshwater, and defendants in error F. C. Hoyt and A. J. Bellport, Jr., on October 24, 1919, entered into a written contract, whereby it was agreed that said Freshwater make an assignment to said Hoyt and Bellport of an oil and gas lease permit to lot No. 8 and the W. ½ of lot No. 9 in block 1 of H. C. Poe third subdivision in Wichita county, and place same in escrow in the City National Bank of Wichita Falls, Tex., and to be delivered to Hoyt and Bellport upon the payment in full for said property of $230,000 as follows: $10,000 in cash, $10,000 within 30 days, and $10,000 within 60 days, for which Hoyt and Bellport would execute their notes; and $200,000 to be paid from the proceeds of one-half the oil produced from said property. Hoyt and Bellport were to begin a well on said property within 60 days

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied May 7, 1924.

and complete six wells thereon within 1 year. The agreement also provided that Hoyt and Bellport waive all claims or defects in the title to the property. The assignment was executed and placed in escrow as agreed. At the same time the two notes were executed, and $2,500 paid to Freshwater, and the balance of $7,500 paid on November 10, 1919. About November 13, 1919, Bellport sent a geologist to make a location on the tract with a view to begin drilling, when he and Hoyt first learned that the Sinclair Oil & Gas Company had possession and was holding possession with an armed guard, who had been living and sleeping on the lease since June 25, 1919. Having been refused possession, Bellport at once demanded of Freshwater the return of his notes, and Freshwater told him that he had transferred the notes to a bank in West Virginia, and they would have to be paid when they were due.

In December, 1919, the First National Bank of Chester, W. Va., filed suit against Hoyt and Bellport on the two notes, alleging that it was a purchaser of same for value before maturity. Defendants in error answered, admitting the execution of the notes, but alleging that they were procured through fraud and without consideration upon fraudulent representations made by Freshwater. They also alleged that said bank was not an innocent holder for value, but was fraudulently acting for the payee, Freshwater. It was further alleged that the notes were executed pursuant to the terms of the contract of October 24, 1919, which was procured by Freshwater through his fraudulent representations that he had title and possession of this land, and that no one was claiming either title or possession adverse to him; that said representations were false; that said Freshwater was not in possession of said property, but the Sinclair Oil & Gas Company was in possession thereof and claiming both title and possession of same; that they relied upon such representation, and were induced thereby to execute the contract, the notes, and to pay the $10,000 in cash. They prayed that Freshwater be made a party defendant and for rescission of the contract, for cancellation of the two notes, and for judgment against Freshwater for the $10,000 cash payment, with interest.

Thereafter, on June 23, 1921, Freshwater filed his answer, alleging that he was the owner of the notes sued on, having repurchased from the bank. He denied the allegations of fraud made by Hoyt and Bellport, and prayed for judgment for the amount of said notes. On June 27, 1921, Hoyt and Bellport filed their supplemental petition, tendering back to Freshwater the assignment in escrow in the City National Bank of Commerce of Wichita Falls which had never been delivered to them. The plaintiff bank was dropped from the suit, and the case tried before a jury on the issues between Fresh-

water and Hoyt and Bellport. On special issues the jury found that prior to October 24, 1919, Freshwater represented to Hoyt and Bellport that there was no adverse claim of title except what claim the state of Oklahoma might have, or placer mining claims, and that there was no one claiming possession to said lots adverse to him; that the Sinclair Oil & Gas Company was claiming title to the oil and gas rights on said lots, except a part thereof lying in the northwest corner below the actual low bank of the river, during all of the time covered by the negotiations and contract, and was in actual possession thereof; that Hoyt and Bellport were not able to enter the premises and get possession thereof for the purpose of complying with the terms of the contract; that Hoyt and Bellport would not have entered into the contract and paid the money and executed the notes had they known that said company was claiming title to, or was in actual possession of, the larger part of said lots; that they relied upon said representations which were material in inducing them to enter into the contract, and did not know at the time the money was paid and notes executed that said Sinclair Company was claiming title or possession to the oil and gas rights on any part of said property; that Freshwater stated to them that he was in possession of the land, which was a mere expression of opinion, without any intention on his part to deceive or mislead them by such expression of opinion; that Hoyt and Bellport were induced by said representation to make said payments and execute said notes, and relied thereon in executing said contract, and that said representation as to possession was material; that Hoyt and Bellport made no independent investigation as to the status of the possession of the property prior to the execution of the contract, and that they did not have full knowledge of the status of the title or possession of the property at the time they made the payment of $7,500. The jury also made other findings which are not deemed material to the questions here raised by the plaintiff in error.

In the trial court both Freshwater and Hoyt and Bellport moved for judgment on the special issues answered by the jury. The motion of Hoyt and Bellport was overruled and that of Freshwater was sustained, and judgment was rendered in his favor for $24,933.32. On appeal the Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment in favor of Hoyt and Bellport, canceling the two notes sued on and for the recovery of $10,000 fraudulently procured from them, holding that the trial court erred in denying the motion of Hoyt and Bellport for judgment in their favor upon the issues found by the jury. It was there held that the material false representations found by the jury to have been made by Freshwater, and relied on by Hoyt and Bellport,

that he was in possession of the property, that there was no adverse claim of title, and that no one was asserting any claim of possession adverse to him were sufficient to entitle them to the relief sought, and that the findings that Freshwater's misrepresentations as to possession were mere expressions of opinion made in good faith are immaterial, as such representations were made as facts and not as an opinion, there being no pleading nor evidence that they were made or understood as an expression of an opinion only. 247 S. W. 637.

[1, 2] In his application for writ of error plaintiff in error, Freshwater, asserts that the Court of Civil Appeals in its opinion "found as a fact, inferentially, that Hoyt and Bellport, prior to the consummation of the trade in question, undertook an independent personal investigation as to the true facts of possession and title and adverse claims, but with respect to" this finding "held as a matter of law that the making of such independent personal investigation to ascertain the truth or falsity of the facts alleged to have been misrepresented did not as a matter of law preclude Hoyt and Bellport from setting aside the contract because of such false representations, as such facts were material on the issue of reliance vel non." He contends that this holding is in conflict with the holding of the Courts of Civil Appeals in the cases of Patterson v. Bushong, 196 S. W. 962, and Newman v. Lyman, 165 S. W. 136, and in conflict with the holding of the Supreme Court in the case of Cresap v. Manor, 63 Tex. 485. In the first two cases cited it is held that—

"One who undertakes to discover the truth of representations made to him is charged with the knowledge of everything which a proper investigation would disclose, and would not be justified in acting upon fraudulent representations merely because they were made to him."

In the case of Cresap v. Manor, above, the holding of the court is as follows:

"The point is also made that Cresap, having deceived Manor as to the value of the $100 note on Gossett, given in part payment of the land, and thereby prevented Manor from retaining a lien on the land, the waiver cannot be insisted upon by the appellant.

"If the supposed fraudulent statement as to the note had been acted upon by Manor, there might be some necessity for us to pass upon the point raised. But it seems from uncontradicted evidence that, if such a representation was made by Cresap, it was not relied on by the appellee. Cresap states that before the bargain was made Manor went to Gossett to make inquiries in reference to both the notes, and upon his return said the notes were all right and he would make the trade. This is not denied by Manor, nor is there any evidence tending to show that in making the trade he reposed upon any statement of Cresap to the effect that Gossett had a good title to the land for which the $100 note was given. Although, he says, such statement was made to him by the appellant, Manor seems not to have been satisfied, but did inquire for himself. We do not think that under such a state of case the vendor's lien otherwise waived should be considered as revived."

In the instant case the jury found that Hoyt and Bellport did not make any independent investigation as to the status of possession of the property, but relied on the false representations made by Freshwater. These findings are amply supported by the evidence, and the Court of Civil Appeals, on application of plaintiff in error, refused to find to the contrary. In this state of the record it is not to be presumed that the court found "inferentially" as a fact that Hoyt and Bellport undertook an independent investigation as to the true facts of possession. Before entering into the contract they went to see the property; their purpose was to investigate its location and proximity to oil production. They made inquiry as to production of an adjoining lease. However, they neither made nor undertook to make any inquiry or investigation as to the status of possession. Freshwater had assured them that he had possession, and that there was no one claiming either title or possession adverse to him. They relied on his false representations. He claims that, having gone to see the property, they thereby undertook an independent investigation of the facts as to his possession and adverse claims, and for that reason are estopped and cannot claim that they relied on his misrepresentations. To sustain his contention would be basing an estoppel on shadow rather than on substance. He is in no position to claim that they should have investigated the truthfulness of his statements. They owed him no such duty. Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Moore v. Beakley (Tex. Com. App.) 215 S. W. 957.

[3] Plaintiff in error contends that Hoyt and Bellport are estopped to have the contract rescinded because of their laches in tendering to Freshwater the assignment of the permit. This claim is inconsistent with his attitude in this case. When Hoyt and Bellport learned that the Sinclair Oil & Gas Company were in possession of this property, and holding possession against them with an armed guard, who lived and slept on the land, they immediately went to Freshwater and demanded return of the notes and cancellation of the contract. They did not have possession of the assignment. It was placed in escrow with the City National Bank. Freshwater told them that he did not have the notes; that he had transferred them to the bank in West Virginia, and they would have to be paid when due. The First National Bank of Chester, W. Va., filed this suit claiming to be an innocent purchaser of the notes before maturity. As far as the

record shows Freshwater did not thereafter claim to be the owner of the notes until he filed his amended answer June 23, 1920. As soon as he admitted ownership of the notes Hoyt and Bellport, by pleading, made formal tender of the assignment in escrow. There is nothing here upon which a plea of laches could be predicated.

[4, 5] Plaintiff in error insists that the Court of Civil Appeals, having held that the findings of the jury on special issues submitted by the court that the representation made by Freshwater that he was in possession of the land was a mere expression of opinion, made without any intention to deceive or mislead Hoyt and Bellport, was supported by neither pleadings nor evidence, should have reversed and remanded the case instead of reversing and rendering the same as was done. In this case Freshwater assumed to know and state the facts in regard to his possession and as to any adverse claim thereto. Having made the statement as a fact and not as a mere opinion, it would be immaterial and no defense, even if he had pleaded and proved that the statement that he was in possession was a mere expression of opinion, and made without any intention to deceive or mislead. Here the parties did not have equal means of information respecting the facts. Freshwater was supposed to know the facts, and Hoyt and Bellport had the right to rely on his knowledge as well as on the truthfulness of his statements. Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Loper v. Robinson, 54 Tex. 510.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

CURETON, C. J., not sitting.