### BARRON G. COLLIER, Inc., v. CONNELLEY et al.

#### No. 4887.

Court of Civil Appeals of Texas. Amarillo.

April 18, 1938.

Rehearing Denied May 16, 1938.

850

Smoot & Smoot and J. R. Ogle, all of Wichita Falls, for appellant.

Walter Nelson, of Wichita Falls, for appellees.

STOKES, Justice.

On April 29, 1930, appellant, who was in the business of furnishing display advertising in street cars and passenger busses, entered into a contract with appellee to furnish to the Cream Bakery of Wichita Falls, of which appellee was the principal owner and manager, such advertising service in the street cars and busses of the Wichita Falls Traction Company for a term of five years, for which appellee agreed to pay the sum of $20 per month. On June 11, 1931, a second contract covering such service was entered into by the parties in which the first contract was canceled and like service was to be furnished by appellant for a period of five years from July 1, 1931, at an agreed price of $22.50 per month, and on June 7, 1933, after approximately two years of the term under the second contract had elapsed, they entered into a third contract, in which it was agreed the second contract would be canceled and like advertising service would be furnished by appellant for a term of forty-three months, beginning June 1, 1933, for which appellee agreed to pay $12.96 per month from the date of the contract until May 31, 1934, and $25.92 per month for the balance of the term, a portion of the consideration provided by the third contract to be applied upon arrearages due on the second contract. The first and second contracts provided that the advertising service should be placed in "street cars and busses,"

and the third contract provided in this respect that the placards should be placed "in the street cars 'and/or' busses of Wichita Falls Traction Company."

This suit was filed by appellant on the third contract, appellant alleging that appellees were in arrears and indebted to appellant thereon in the sum of $787.20, with legal interest.

Appellant, in the alternative, sued upon the second contract, alleging that if for any reason it was not entitled to recover on the third contract of June 7, 1933, appellee was indebted to it on the second contract in the sum of approximately $1,700, and, in the alternative, prayed for judgment accordingly.

The defense made by appellee was, in substance, that the third contract was procured by fraudulent respresentations of the representative and agent of appellant. He alleged that appellant was aware of the contemplated discontinuance by the Traction Company of its street car service and substitution of busses; that appellee was not aware of such contemplated change and, in order to induce him to sign a contract that would cover service in busses alone in the event street cars were discontinued, appellant's agent induced him to execute the third contract in which the phrase "street cars and busses" was changed to the phrase "street cars and/or busses." He alleged that when the contract was presented to him for his signature, the agent of appellant represented to him that the contracts were identical, the third being exactly like the second, with the exception only of a change in the amount and manner of paying the monthly compensation. His allegations in this respect were sufficient as a basis for canceling the third contract for fraud.

The case was submitted to a jury upon six special issues in which the jury found, in effect, that the agent of appellant made the representation alleged by appellee; that it was false and was willfully made; that it was a material inducement to appellee to sign the third contract; that by receiving and retaining the contract without notifying appellant of his objection to the change in the phrase mentioned, appellee had not waived his objection and that he had not waived such objections by continuing payments under the contract after he had had an opportunity to read it and had received a letter from appellant, calling his attention to it.

Based upon the finding of the jury, the court entered judgment denying appellant any recovery on the third contract, but granted judgment in its favor for the tendered sum of $87.36, with legal interest from the date of the third contract, aggregating $106.15, being the admitted balance of the amount due and owing by appellee for the advertising service on June 7, 1933, when the third contract was executed.

■ Appellant assigns error of the trial court in submitting the case to the jury and in refusing to give a peremptory instruction in its favor on the third contract because the evidence showed that appellee was not prevented from reading the contract when it was executed by him and because, on June 23, 1933, appellant wrote a letter to appellee, informing him of the change that had been made in the phrase above quoted, and because no damages were alleged by appellee to have been suffered by him on account of the change that had been made in the phrase referred to. The evidence was conflicting on the question of whether or not appellant's agent, at the time the contract was executed, represented to appellee that the third contract was exactly like the second with the exception only of the amounts to be paid each month, and the jury having found against appellant on that issue, we are without authority to overrule such finding. Appellant contends in this regard that appellee, having been furnished ample opportunity to read the contract and inform himself of its contents, will not be permitted to maintain that he did not know the alleged change had been made in the third contract from those contained in the second.

■ Without proof of fraudulent representations in regard to such matter, appellant's contention in this respect is undoubtedly correct; but the law is otherwise when one party signs a contract upon representation of the other to the effect that its material provisions are different from those actually contained in it. In such case, he has the right to accept statements so made and is under no obligation to investigate or read the contract. The law in this regard is neatly summed up in the expression of an early English jurist to the effect that: "When once it is established that there has been any fraudulent representation by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector: 'You, at least, who have stated

what is untrue for the purpose of driving me into a contract cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty.'" Freshwater v. Hoyt et al., Tex.Com.App., 259 S. W. 923; Johnson v. Sugg, Tex.Com.App., 291 S.W. 857; Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808.

We do not think the letter that was written to appellee by appellant June 23, 1933, in which a copy of the third contract was inclosed, was sufficient to call appellee's attention to the change made in the contract even if he had read it. After mentioning the nature of the contract and giving its date, duration, and terms of payment, the letter contained the following statement: "The service covered is as follows: Double full service in street cars and/or busses." It does not inform appellee that such was the wording of the contract nor that the quoted language was different from that which had been used in the second contract. Appellee testified he did not read the letter for the reason that he assumed it was merely a statement of what was inclosed and upon observing the inclosure to be a copy of the contract, he placed it in his safe. After being assured by appellant's agent and representative at the time the contract was executed that it was identical with the previous one save only as to the amount and terms of the compensation, appellee was under no duty to make special investigation or read letters or other documents coming from appellant to ascertain whether or not its agent had truthfully represented the terms of the new contract. The assignments raising these questions are, therefore, overruled.

Under appropriate assignments, appellant contends that the substitution in the third contract of the phrase "and/or" for the conjunction "and" in reference to the vehicles in which the advertising was to be placed was immaterial and inconsequential and, therefore, ineffective as grounds upon which to cancel the new contract. It asserts in this connection that the gravamen of the negotiations was the furnishing by appellant to appellee of advertising matter to be placed in street passenger vehicles and, whether they were placed in street cars or passenger busses was of no consequence, since one was as valuable and effective as the other would have been. We do not agree with appellant in this contention. If the grammatical monstrosity "and/or" means anything, the effect of the change in the phrase referred to probably was to change the obligation of appellant from that of furnishing advertising service for both street cars and busses to the more flexible one of furnishing such advertising service for either street cars or busses or both. It may be that advertising matter placed in one of such vehicles is, in the judgment of appellant, as effective as the same advertising would be if placed in another of such vehicles; but appellee had the right to follow the suasion of his own judgment, and to contract for such advertising service as he thought would be best and most suitable to his business.

Nor are we in accord with the assertion of appellant that, in a case of this kind, it is necessary that appellee allege and prove that he has been damaged in some amount or particular before he is entitled to rescind the contract for the fraud alleged. It is true that, in the case of Russell v. Industrial Transportation Company, 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 51 A.L.R. 1, on motion for rehearing, the Supreme Court said (page 464): "That fraud which has produced, and will produce no injury will not justify a rescission, nor support an action either for rescission or damages, is an established principle of law and equity." But in the later case of Nance v. McClellan, 126 Tex. 580, 89 S.W.2d 774, 106 A.L.R. 117, the Commission of Appeals, in an opinion written by Judge Smedley, and adopted by the Supreme Court, the rule was analyzed and certain well-known exceptions recognized and reconciled with it by confining the rule to those cases in which the buyer has obtained the thing purchased and seeks to rescind on false representations as to quality, condition, or value. We think this case comes well within the exceptions announced in the cited case, and overrule appellant's contention in this regard. Nance v. McClellan, supra, and authorities there cited.

Under its sixth proposition, appellant complains of the action of the trial court in rendering judgment in its favor for only such an amount as was earned under the second contract up to the time the third contract was entered into, June 7, 1933.

In this, we think the trial court committed error for which the judgment must be reversed. The third contract was entered into as a novation of the second contract. Regardless of what may have prompted its execution, whether it proceeded from the request of appellee for a reduction in the monthly payments to be made by him, or

from the uncommunicated desire of appellant to forestall a termination or impairment of the second contract by the impending change in the transportation service from a mixed service to busses exclusively, it is conclusive from the record that it was the purpose of both appellant and appellee to substitute the third contract for the second and that the second contract should be abrogated when the third took effect. Under the findings of the jury in answer to the special issues submitted to them, the court could not have done otherwise than nullify the third contract for fraud, and that was the effect of the judgment rendered. The court then proceeded to render judgment in favor of appellant for the sum of $106.15 which the judgment states is the amount that was owing to appellant by appellee at the time the third contract was executed on June 7, 1933. The rule in such cases is that, if the attempted novation is invalid on account of fraud or illegality, it cannot constitute a consideration for the novation and the parties are relegated to their former positions. There is no claim that the second contract was invalid nor that it was not binding upon all the parties. If it was and the attempted novation was ineffective, then the rights of the parties are to be governed by the second contract. Nobles v. Long, Tex.Civ.App., 202 S.W. 752, 753; Davis v. Wynne, Tex.Civ.App., 190 S.W. 510; Erwin v. White, Tex.Civ.App., 54 S.W.2d 867; Casualty Reciprocal Exchange v. Bryan, Tex.Civ.App., 101 S.W.2d 895; Word v. Kennon, Tex.Civ.App., 75 S.W. 365.

The record shows that the placards were maintained in the transportation vehicles continuously from some time in 1930 until the date of the trial. Appellee argues, however, that there was no consideration moving to him for service furnished after July 5, 1933, for the reason that the Wichita Falls Traction Company did not operate any street cars after that date. The record is not clear as to the kind of transportation vehicles maintained and used by the company at all times after the date mentioned; but it is clear that transportation service was maintained after that date, either in the operation of street cars and busses or busses alone and that, whatever may have been the nature of such service, the display cards of appellee were carried in the vehicles used. Just what effect the modification of the service would have upon the second contract was not adjudicated in the trial, and the record is not sufficiently clear to establish the contention of appellee that the traction company mentioned in the contract ceased its transportation service altogether on or about the date mentioned. If so, then it may become material as to whether the transportation concern that did furnish such transportation service on the streets after that date was, in effect, the same concern or an altogether different one, and, if a different one, whether or not such change would affect the contract between the parties to this litigation.

In the state of the record, we are not in position to determine the rights of the parties under the second contract and, for the errors pointed out, the judgment of the court below will be reversed and the cause remanded.