**COMMERCIAL CREDIT EQUIPMENT CORPORATION et al., Appellants,**

v.

**Clyde C. ELLIOTT, Appellee.**

No. 4138.

Court of Civil Appeals of Texas.

Eastland.

March 31, 1967.

Rehearing Denied April 21, 1967.

Naylor & Harrison, Richard D. Naylor
Pecos, John F. Tomlin, Pecos, for appel-
lants.

Hudson & Archer, Hill D. Hudson and
A. R. Archer, Jr., Monahans, for appellee.

COLLINGS, Justice.

Commercial Credit Equipment Corpora-
tion brought suit against Clyde C. Elliott on
three purchase contracts on cotton harvest-
ing equipment purchased by the defendant.
Plaintiff alleged that a November 30, 1964
purchase agreement was in default because
of the failure of defendant to pay a January
2, 1965 installment in the amount of $1,716.-
55; that plaintiff deemed itself insecure
on two other purchase agreements with in-
stallments due in October and November of
1965 and asked that said notes be accelerated
and declared due, and prayed for fore-
closure of the chattel mortgages securing
the indebtedness evidenced by each of said
purchase contracts. A Writ of Sequestra-
tion was obtained by appellant and all the
equipment covered by said contracts was
taken into possession by the Sheriff and
delivered to the plaintiff under a replevin

bond on which Fidelity and Deposit Company of Maryland was surety. It is stipulated that the sequestered property was sold by Commercial prior to the time of the trial. Elliott filed a cross action for damages alleging a wrongful sequestration. He alleged that the January 2, 1965 due date of the first installment on the November 30, 1964 purchase agreement was inserted therein by mutual mistake; that under the agreement between the parties no payment was due thereon until the 1965 cotton picking season. He further alleged in the alternative that the January 1965 due date was fraudulently inserted in such purchase agreement by appellant. The case was tried before a jury and based on the verdict judgment was rendered for Elliott against Commercial Credit Equipment Corporation and its surety Fidelity and Deposit Company of Maryland for actual and exemplary damages. The defendants have appealed.

The record shows that prior to November 1964 Commercial Credit Equipment Corporation hereinafter referred to as Commercial had purchased from a Pecos implement dealer, Dozier Tractor & Implement, Inc., two deferred payment purchase contracts executed by Clyde C. Elliott, one dated October 11th, 1963 and the other dated October 27, 1963. These purchase contracts were negotiable instruments, the first maturing in two annual installments due on October 15, 1964 and October 15, 1965, and the second maturing in three annual installments due on October 27, 1964, 1965, and 1966. Said contracts constituted chattel mortgages in that each contained a provision retaining title to the equipment described until payment of the purchase price had been made. Each of said contracts contained provisions for acceleration of maturity and for possession of equipment covered in the event of default by the purchaser.

On November 30, 1964, appellee Elliott executed a third deferred purchase contract covering two Rusk Cotton Pickers. For convenience said purchase contracts will be referred to as deferred purchase contracts 1, 2 and 3. Elliott contends that the first installment of January 2, 1965, of the third contract was erroneously written into this deferred purchase agreement; that it had been agreed prior to the execution of such contract that the first installment should not be due and payable until the 1965 cotton harvesting season; that the cotton harvesting season for 1964 was entirely over when the November 30, 1964 contract was negotiated and signed, and that provision for payment of the first installment of $1,716.55 on January 2, 1965 was a mutual mistake, or in the alternative, was fraudulently inserted therein upon appellants' instructions.

The record shows that on September 28, 1964, Elliott purchased the two cotton harvesting machines covered by the November 30, 1964 purchase agreement from Harral and Marable, a partnership hereinafter referred to as Marable, for a purchase price of $10,500.00, which was the amount Marable owed Commercial on said machines. The sales agreement between Elliott and Marable contained a provision that appellee was to pick Marable's cotton at the rate of 4¢ per lint pound and that Marable was to apply the amount of the hire for picking against the purchase price of the machines. It was agreed that Marable would forward the money owed by Marable to Commercial against the machines as appellee earned the money for picking Marable's cotton. The total amount thereafter forwarded by Marable to Commercial during the 1964 cotton harvesting season was $7,596.85. On October 15, 1964, appellee, from money he had coming for picking Marable's cotton, caused $1,050.00 to be paid to Commercial and applied to appellee's son's note to Commercial on another cotton harvesting machine. Appellee's son owed an additional balance of $1,108.08 to Commercial and this amount was made available to Commercial by appellee on November 14, 1964. Appellee urges that because of the above shown payments made or caused to be made by him to Commercial on behalf of Marable

and appellee's son over a short period of approximately 60 days appellee needed an extension of time on deferred purchase contracts 1 and 2.

Appellee negotiated with H. B. Lott, Commercial's branch manager, in October and November of 1964 but could come to no agreement about an extension of payments on said two purchase agreements. In the latter part of October appellee discussed the situation with R. E. Marable who stated that he would try to get a year's extension of the remaining balance of $3,500.00 that he owed Commercial. On November 3, 1964, Commercial by letter granted Marable a year's extension on the cotton harvesting equipment which Marable had contracted to sell to appellee. Marable informed appellee of this fact.

Appellee testified that on November 30, 1964, after he discovered that Marable had secured a year's extension on the balance of the note against the Marable pickers, he called H. B. Lott, branch manager of Commercial in Dallas, Texas and they again discussed the refinancing of his obligations to Commercial. Appellee stated that at that time he and Lott agreed that the Marable cotton pickers would be refinanced and that no payments or installments of the indebtedness thereon would become due until the 1965 cotton harvesting season. The record shows that at that time the cotton harvesting season for 1964 was completely over.

Appellee Elliott further testified that Lott told him the only way Commercial would handle his indebtedness on the Marable cotton harvesting equipment would be for the transaction to appear as a sale from Dozier Implement Company of Pecos; that Lott advised appellee at that time to go to Dozier Implement Company in Pecos and that the proper papers would be prepared; that on the same day about two hours after the telephone conversation between appellee and Lott, appellee and R. E. Marable went to Dozier Implement Company at Pecos where they found that papers had

been prepared including a bill of sale from Marable to Dozier Implement Company covering the Marable cotton pickers and the November 30, 1964 purchase agreement between Dozier and Elliott. Lott testified that the first payment was at his instruction intentionally and deliberately set up for January 2, 1965. There was evidence to the effect that Dozier was in a hurry to go to El Paso and that the signing of the papers was rushed so that appellee didn't have the opportunity to read the contracts as thoroughly as he would ordinarily have done. Appellee further stated that he did notice in the contract the amount of the payments but didn't observe that the first installment was due on January 2, 1965; that since it was November 30, 1964, it did not occur to him that the first installment in the amount of $1,716.55 was made payable only slightly over thirty days in the future rather than one year in the future as he had about two hours prior thereto agreed with Lott in the telephone conversation. Elliott stated that he had no reason at that time to suspect that Lott would not have the purchase agreement drawn in accordance with the agreement between them. The evidence indicated that Lott had agreed to a loan totaling $6,000.00, and that a portion of the money was to be applied to the other contracts, said amount to be credited as follows: $3,500.00 to completely pay Marable's obligation to appellant; $2,500.00 to be applied to the payment of the 1964 installment of $2,112.70 due against the equipment covered in appellee's deferred purchase contract number 2 and the balance of $387.30 to be credited to the note payment in the amount of $1,975.00 covered by appellee's deferred purchase contract number 1, but the balance of $1,587.70 was to be carried against the Marable pickers. This balance was the figure $1,716.55 which included the $1,587.70 balance with one year's interest added.

Lott testified that it was the policy of Commercial to have note payments on cotton harvesting equipment due during the cotton harvesting season, but that the pur-

chase contract of November 30, 1964, providing for the first payment to be on January 2, 1965 was in compliance with the prior oral agreement, and that there was no mistake. Appellee's other purchase agreements covering cotton harvesting equipment were payable during the cotton harvesting season. Marable testified that his indebedness to appellants on cotton harvesting equipment had always been made payable in the Fall during the cotton harvesting season. Appellee Elliott testified that his only income was from either the production or harvesting of cotton, and that on November 30, 1964, the cotton harvesting season was entirely over and he had no further income until the following season which facts were known to Commercial; that under these circumstances a thirty day extension was of no benefit whatever to him.

· ■ Special Issue Number 4 inquired whether the $1,716.55 payment provided for in the November 30, 1964 purchase agreement was made payable on January 2, 1965 by mutual mistake of the parties. The answer was "It was a mutual mistake." In appellants' first three points it is urged that the court erred in submitting Special Issue Number 4 to the jury and in rendering judgment thereon because there was no evidence to support the submission of the issue or to support the answer thereto and that the court erred in rendering judgment on such finding because of the insufficiency of the evidence. We sustain appellants' first three points. In Sun Oil Company v. Bennett, 125 Tex. 540, 84 S.W.2d page 447, (Tex.Com.App.1935), the rule of law concerning mutual mistake is stated as follows:

> "In the absence of fraud or inequitable conduct, a written instrument will not be reformed on account of mistake, unless the mistake is mutual; that is, a mistake common to both parties, both laboring under the same misconception in respect to the terms of the instrument."

The evidence does show that in the execution of the contract in question appellee Elliott was laboring under a mistake. He mistakenly believed that the due date of all installments provided for in the contract were during the 1965 cotton harvesting season. There is, however, no evidence or, at least, insufficient evidence that appellant was mistaken about the matter. Harold Lott, branch manager for Commercial at its Dallas office, with whom Elliott negotiated and had a telephone conversation shortly before execution of the contract in Pecos, testified that he instructed Dozier how the papers should be prepared and that the contract dated November 30, 1964, providing for payment of $1,716.55 on January 2, 1965, was thereafter received by him; that he examined the contract and found it had been prepared in "exactly the way we had agreed to handle it." Lott stated that he knew of no misunderstanding Elliott had or might have had. Lott's testimony plainly shows that there was no mistake on the part of appellant.

The jury further found that at the time of execution of the November 30, 1964 purchase agreement there was an agreement between Lott and Elliott that the $1,716.55 payment was not to become payable before the 1965 cotton picking season; that Elliott relied upon such agreement in executing the purchase agreement dated November 30, 1964, that the January 2, 1965 due date of the $1,716.55 payment on the November 30, 1964 purchase agreement was inserted for the purpose of defrauding Elliott, that Commercial did not act in good faith and upon probable cause when it declared all of Elliott's indebtedness due and sequestrated the equipment securing that indebtedness, that Elliott sustained actual damages by reason of the loss of use of the equipment sequestrated from him on February 26, 1965, to the date of the trial, that interest at the rate of 6% per annum on the difference between the value of the equipment sequestrated and the admitted indebtedness of Elliott to Commercial would not be sufficient to compensate Elliott for loss of use of said equipment, that the amount of money which would fairly and reasonably

compensate Elliott for the actual damages sustained by him by reason of the loss of use of said equipment was $25,000.00, that Commercial acted with malice in causing issuance of the Writ of Sequestration against the property of Elliott, and that Elliott was entitled to exemplary damages in the sum of $10,000.00.

In appellants' 4, 5 and 6th points it is urged that the court erred in submitting issue Number 5 inquiring whether the January 2, 1965 due date of the $1,716.55 payment provided for in the November 30, 1964 purchase agreement was inserted for the purpose of defrauding Elliott, erred in rendering judgment upon the affirmative answer to such issue because there was no evidence to support its submission or the answer, and that the evidence was insufficient to support such issue, answer or the judgment. These points are overruled.

█ There was ample evidence showing, and the jury found, that in the negotiations between appellee and Lott there was an agreement that no payment would become due on the November 30, 1964 purchase contract until the 1965 cotton picking season. Commercial had previously agreed with Marable for such an extension. The evidence shows that the oral agreement between Elliott and Lott was by telephone and only about two hours before the execution by Elliott of the written purchase contract with Dozier, which provided for payment of an installment of $1,716.55 on January 2, 1965. Lott testified that he instructed Dozier to prepare the purchase contract in the exact manner that it was prepared and executed. The evidence is undisputed that on November 30, 1964 the 1964 cotton picking season was completely over and that all parties connected with the transaction knew this to be true. Elliott testified that his only income was from either the production or harvesting of cotton and that he had no expectation of any further income until the cotton harvesting season in the Fall of 1965; that under these circumstances he needed an extension

of his indebtedness until the Fall of 1965, and that a thirty day extension would have been of no benefit to him. Provision for an installment payment on January 2, 1965 was at complete variance with the oral agreement of the parties as testified to by appellee and with the obvious purpose in executing the instruments involved. Lott, nevertheless, testified in effect that he instructed Dozier how to prepare such papers including the purchase agreement, that he saw such instruments after they were prepared and executed, and that they were prepared and executed in the exact manner of his intentional and deliberate instructions to Dozier. The record shows that appellee was rushed by Dozier in the execution of the purchase contract, and that the security for the total indebtedness owed by appellee to appellant was by reason of execution of such instruments increased by $6,000.00 or $7,500.00. When Elliott, slightly more than thirty days later, was unable to pay the January 2, 1965 installment of the November 30, 1964 purchase contract Commercial asserted that it deemed itself insecure, asked that all its notes held against appellee be accelerated and declared due and sought foreclosure of the chattel mortgage securing such indebtedness. A Writ of Sequestration was sued out under which the mortgaged equipment was seized, delivered to Commercial under a replevin bond and thereafter sold. In our opinion the evidence amply supports the submission of special issue number 5, the affirmative answer of the jury that the January 2, 1965 date of payment was inserted in the contract for the purpose of defrauding Elliott, and supports the judgment based thereon.

█ Appellants particularly urge that the evidence does not support a finding of fraud; that it shows as a matter of law that Elliott had ample opportunity to read the contract and that he was negligent in failing to observe that the first installment on the November 30, 1964 note was made due on January 2, 1965; that one cannot avoid the terms of a written contract on the ground that he did not read the document

**42**

he signed or that he did not understand it. Appellants' contention is in accord with the general rule. However, the facts of the instant case come under a well established exception. The purchase contract of November 30, 1964 was prepared under the direction of Lott. It provided for a payment on January 2, 1965. Elliott signed this contract but he testified that he did so upon a representation by Lott about two hours before that the payments would not be made due until the cotton harvesting season of 1965. The evidence shows that this representation by Lott was material in inducing execution of the contract by Elliott. Under these circumstances Elliott had the right to rely upon the representations of Lott concerning the due dates of the installments and was not required to investigate or read the contract to insure that it had been prepared in compliance with the agreement. Barron G. Collier, Inc. v. Connelley, (Tex.Civ.App.), 116 S.W.2d 849, affirmed, 134 Tex. 569, 137 S.W.2d 14; Freshwater v. Hoyt, 259 S.W. 923, (Tex.Com.App.); Johnson v. Sugg, Tex.Com.App., 291 S.W. 857; Crofford v. Bowden, 311 S.W.2d 954, (CCA 1958, writ ref.).

Appellants also contend, in effect, that if there was any fraud in the inducement of the purchase contract of November 30, 1964, that Elliott waived the fraud by his failure to act promptly upon discovery thereof; that Elliott was given a copy of the purchase contract and almost two months later he wrote a letter to appellant but made no mention of any error in the maturity date of the first installment. Appellee testified in effect that when he received notice from appellants' Mr. King of the failure to pay the January 2, 1965 payment he examined his copy of the contract but did not at that time become concerned because he was confident that there had been a mistake in preparing the contract and that Mr. Lott would see that the mistake was corrected. Appellants further point out that on February 18, 1965, Commercial's branch manager, Lott, wrote to Elliott and advised him that unless the January 2, 1965 payment was made forthwith his company would be compelled to repossess the equipment and that Elliott made no response to such demand for payment.

In our opinion appellants' contention concerning waiver is not well taken. There was no finding of waiver. The facts and circumstances urged by appellants were merely evidentiary on the question of waiver and of whether appellee relied upon the representations of Lott in executing the sales contract. The evidence does not show waiver as a matter of law. There was no showing that appellee received any benefit from the contract or that Commercial's position was altered to its detriment after appellee's discovery of the fraud.

Special issue number 6 was as follows:

"Do you find from a preponderance of the evidence that Commercial Credit Equipment Corporation did not act in good faith and upon probable cause when it declared all of Clyde Elliott's indebtedness due and sequestrated the equipment securing said indebtedness?"

We overrule appellants' point urging that the court erred in submitting the above special issue over appellants' objection that it was duplicitous. The issue does not submit two questions, one of which might be answered "yes" and the other "no". The terms "good faith" and "probable cause" as used in the special issue are in our opinion synonymous. Cleveland State Bank v. Turner, 278 S.W. 1107, (Tex. Civ.App. 1925, no writ history); Vol. 18A Words and Phrases, page 32.

Special issues 7, 8 and 9 inquired (7) whether appellee sustained any actual damage by loss of use of the equipment sequestered from February 26, 1965 to the time of the trial; (8) whether 6% interest on the difference between the value of the equipment sequestered and the

admitted indebtedness of appellee to appellant would compensate appellee for the loss of use of such equipment during such period and (9) the amount of money which, if paid in cash, would fairly and reasonably compensate appellee for the actual damages suffered by reason of such loss of use of his equipment. The jury answered special issue number 7 in the affirmative, special issue number 8 in the negative and answered special issue number 9 by finding $25,000.-00.

In appellants' 8, 9 and 10th points it is contended that the court erred in submitting such issues to the jury over the objection that they failed to limit appellee's damages to the period of time from the date of the sequestration to the date the installments were due on the purchase contract. These points are not well taken. Commercial sequestered appellee's equipment because of a claimed default of payment under its sales agreement or mortgage. Appellee, claiming an unlawful sequestration of his equipment, sought to recover as damages the difference between the value of the property and the amount of his indebtedness. The jury found that there was a difference of $5,248.36 between the actual value of appellee's equipment at the time of the conversion and the indebtedness of appellee to Commercial. Appellee was entitled to recover interest thereon until the time of judgment, but did not seek to recover interest to compensate for loss of use of the sequestered property. He did seek to recover special damages based upon loss of use. It is held that where interest will not fully compensate a plaintiff for the damages resulting from the wrongful taking of his property he may recover the value of its use. 14 Tex.Jur.2d 36. As already noted the jury found that interest on the difference between the value of the equipment and the indebtedness would not compensate appellee for his loss of use of the equipment. Appellants' 8, 9 and 10th points are overruled. Recovery for loss of use is based upon actual damages suffered. The record here shows ac-

tual damages. The evidence, in our opinion, also shows that Commercial had notice of facts sufficient to apprise it of the probable loss of profit to appellee as a result of its sequestration and conversion of the equipment from the time of the sequestration to the time of the trial. Appellant relies upon Harris v. Christianson-Keithley Company, 303 S.W.2d 422, (Tex.Civ.App.1957, ref. n. r. e.). The pleadings and facts of that case are distinguishable from those of the instant case. In that case Harris brought suit against the defendant for conversion and the defendant brought a cross action seeking to recover a repair bill and the unpaid purchase price owed on the truck and secured by a chattel mortgage. The District Court entered judgment allowing Harris as an offset to the cross action the value of the truck at the time of conversion plus interest. On appeal to the Court of Civil Appeals it was held that since Harris had prayed for two inconsistent remedies in the conjunctive, that is, damages and interest, he could not complain of the denial of one of the remedies sought where the court had granted the other; that he could not recover for special damages based upon loss of profit and also interest. In the instant case, Elliott did not seek to recover interest. The jury found that interest would not adequately compensate him for the loss of use of his equipment. Elliott did seek to recover special damages based upon loss of profits and the court did not err in submitting such issues to the jury.

Appellants' points 11, 12 and 13 complain of the jury finding of damages for the loss of use of appellee's equipment in the amount of $25,000.00, asserting that the evidence is insufficient to support such finding, that the finding is excessive and contrary to the great weight and preponderance of the evidence. A consideration of the entire record convinces us that these points are not well taken and should be overruled. Appellee alleged and the proof shows that his equipment was wrongfully sequestered by appellant, that it had a special use to appellee and that 6% interest would not adequately

compensate for his damages. Appellee was entitled to recover such profits as would have been earned by him in his business of harvesting cotton during the 1965 cotton harvesting season which appellant had notice of and which were lost because of appellants' wrongful sequestration and conversion of appellee's equipment. Morriss v. O'Neal, 109 S.W.2d 1156 (CCA 1937 no writ history); Stokes v. Snyder, 55 S.W.2d 557, (Tex.Com.App.).

■ Numerous witnesses testified that appellee harvested their cotton crops during the 1964 cotton season, that he did an excellent job, and that if he had had four cotton harvesting machines to use during the 1965 cotton season he would have been able to keep them busy. Appellee testified that if he had had the use of the four harvesting machines during the 1965 season he would have made a profit of $30,000.-00. He stated that he tried to make the $30,000.00 replevy bond required to regain possession of his equipment; that he also tried to buy other equipment but was unable to do so; that he was unable to do so because the wrongful repossession of his equipment had hurt his credit to the extent that he could get no one to finance him. The evidence in our opinion amply supports the finding that appellee's damage for the loss of use of his cotton harvesting equipment during the period in question was $25,-000.00.

■ Special Issue No. 10 inquired whether Commercial acted with malice in causing issuance of the Writ of Sequestration against appellee on February 26, 1965. This issue was answered in the affirmative. The jury found in answer to special issue number 11 that appellee Elliott was entitled to exemplary damages against Commercial, and found in answer to special issue number 12 that the amount of exemplary damages which appellee was entitled to was $10,000.00. In appellants' 14th, 15th and 16th points it is contended that there was no evidence to support the submission of special issue number 10, that

the finding that appellee was entitled to $10,000.00 exemplary damages was excessive and so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. These points are overruled. The facts and circumstances surrounding execution of the November 30, 1964 contract, the prior agreement concerning the time of payments between appellee and Commercial's official Lott, shows bad faith and fraud on the part of Commercial and shows that no probable cause existed to justify appellant in sequestering appellee's equipment because of the default of the January 2, 1965 installment provided for in the contract. The evidence supports the finding of the jury that it had been agreed by the parties that no payments would be due on the November 30, 1964 purchase contract until the 1965 cotton picking season. These facts and circumstances supported the finding of malice on the part of Commercial. One who sequesters property when he knows or should know that he has no right to title or possession of the property taken shows such a disregard for the rights of others as will authorize exemplary damages. The amount of exemplary damages assessed by the jury is in our opinion not excessive.

■ We also overrule appellants' point contending that the court erred in rendering judgment against Commercial for exemplary damages because the purchase contract sued on authorized appellant to take possession of the equipment if it deemed itself insecure, and that this provision of the contracts precluded any damages against appellant arising from the sequestration. A mortgagee who attempts to take possession of property under the mortgage must act reasonably and have probable cause to apprehend the loss of his claim. He has no arbitrary power to deem himself insecure regardless of the facts. The jury found upon sufficient evidence that Commercial did not act in good faith and upon probable cause when it declared all of appellee's indebtedness due and sequestered the equipment securing

said indebtedness. Under these circumstances Commercial had no arbitrary power to deem itself insecure and take the property.

■ The court did not err in refusing to submit appellants' special issue number 1 inquiring, in effect, whether Commercial was a holder in due course of the contract in question, that is, whether it received same by assignment from Dozier in good faith without knowledge of any defect, mistake or error in connection with the January 2, 1965 installment. The evidence is undisputed that appellants' agent and official Lott knew all about the transaction. Lott testified that he negotiated the agreement with Elliott, instructed Dozier to prepare the contract and that Dozier did prepare it exactly as instructed. The evidence simply does not show that Commercial was a holder in due course without knowledge of the facts and circumstances surrounding the negotiation and execution of the November 30, 1964 purchase contract.

■ It is further contended that the court erred in rendering judgment against Fidelity and Deposit Company of Maryland for the sum of $30,000.00, and that there was no evidence to support the rendition of any judgment against such surety. The replevin bond was in statutory form and conditioned that Commercial would have the property described therein forthcoming to abide a decision of the court together with the value of the fruits, hire or revenue thereof. We sustain this point. The judgment against the surety in so far as it concerns $25,000.00 for loss of use of the equipment was improper because under Rule 704, Texas Rules of Civil Procedure recovery is not provided for loss of profits but only for the value of fruits, hire, revenue or rent. American Indemnity Company v. McCann, 45 S.W.2d 174, (Tex.Com.App.). The point is also sustained in so far as it concerns the remaining portion of the judgment against the surety based upon the difference between the value of the equipment and the stipulated amount of Commercial's debt

secured by such equipment. Rule 704 provides that judgment shall be "for the value of the property replevied as of the date of the execution of the replevy bond." There was no finding as to the value of the property at the time of the execution of the replevy bond on April 22, 1965. The jury did find the value of the property as of February 26, 1965, the date of the execution and levy of the Writ of Sequestration but there is no finding and no testimony of the value of the property at any time subsequent to that date. Musterman v. Acme Engine Rebuilding Company, 383 S.W.2d 620 (CCA 1964, no writ history), and cases cited therein.

The judgment is affirmed in part and reversed and rendered in part. The judgment against Commercial Credit Equipment Corporation is affirmed. The judgment against Fidelity and Deposit Company of Maryland is reversed and rendered.